## Case No. 11,005.

### PERRY et al. v. CRAMMOND et al.

[1 Wash. C. C. 100.] [1]

Circuit Court, D. Pennsylvania. April Term, 1804.

BILLS AND NOTES — BONA FIDE HOLDER OF ACCOMMODATION BILL—ILLEGAL CONSIDERATION— DELIVERY AFTER DEATH OF DRAWER.

1. When an accommodation bill goes into the hands of a bona fide holder, even with notice of its particular character, he is entitled to recover the amount thereof from the drawer.

2. Bills, drawn for an illegal consideration, or for one which happens to fail, cannot be enforced by one having notice of their character.

3. Bills, delivered after the death of the drawer, to a person who had made advances upon their faith, to the drawer, who had them in his possession, for the purpose of raising money for the drawer; may be enforced against the representatives of the drawer.

This suit was brought by the assignees of Nantes, surviving partner of Muilman & Company [against Crammond and others, executors of Cay, surviving partner of Clow & Cay], to recover £18,000 sterling, the amount of forty-seven bills of exchange, with damages at the rate of twenty per cent. The case, from the evidence, was as follows: Joseph Hadfield, in London, was the confidential friend of Clow & Cay of Philadelphia, received their remittances, and negotiated their business to a large amount. The affairs of Clow & Cay getting considerably embarrassed, and Hadfield, having exhausted his ingenuity to keep their credit afloat, by accepting and taking up a great number of bills drawn on him and others; at length advised him to send on to him a number of bills drawn upon him, Hadfield, in favour of any one of his clerks, varying the name, which he, Hadfield, could use as occasion might require, to raise money, until remittances of a more substantial kind could come. In pursuance of this advice, the bills in question were sent forward, drawn on Hadfield, at sixty days, part of them in favour of Murdock, and part in favour of Reddick, two of the clerks of Clow & Cay, and were endorsed in blank. They were received by Hadfield in February and March, and remained in his possession until the transfer to Nantes took place. Muilman & Company were the friends of Hadfield, and enabled him, by great advances, to keep up

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

not only his own credit, but that of Clow & Cay; who, by letter to Muilman & Company, in March or April, agreed to guaranty any negotiations which might take place between them and Hadfield, their friend; and, on their account, subsequent to this letter, and on the ground of it, viz. in April and May, 1793, upwards of £19,000 were advanced by Muilman & Company to Hadfield, which was by him applied to the use of Clow & Cay. It appears, by an account stated by the master, in a suit instituted in the court of chancery, in England, by the defendants, against the plaintiffs and Hadfield; that, during the months of April, May, June, July, and August, 1793, balances, from £6,000 to £17,000, were due from Clow & Cay to Hadfield; but, by remittances made in August and September, they were discharged: and, finally, a balance of about £8,000 was reported to be due from Hadfield to Clow & Cay, without including the bills in question. Clow died on the 24th of September, of which Hadfield and Nantes heard the last of October, and it was confirmed the 6th of November, 1793; on which day, also, the death of Cay was known; and Nantes, knowing that Hadfield had in his possession the bills in question, and the purpose for which they were deposited with him; he, on the 6th of November, demanded of Hadfield, that he would accept those bills as of the 4th of September, that they might be protested on that day, viz. the 6th November, and delivered to him, Nantes, as a further and better security for the advances made by Muilman & Company, for the use of Clow & Cay. All this was accordingly done, and the bills were then sent over here to be put in suit. At a subsequent period, an arbitration took place between Nantes and Hadfield, and a balance found due from the latter to the former of the £19,000; and £100 said to have been advanced to Hadfield, and by him applied to the use of Clow & Cay; but it does not appear by this award, or by the report of the master in the suit above mentioned, that this £19,000 was, or was not introduced into the account between Hadfield and Clow & Cay. Muilman & Company kept no account whatever with Clow & Cay; and, by Hadfield's accounts, none of his advances are stated as being made by Muilman & Company, but generally as by himself. Hadfield, in his answer to the defendants' bill, and in his deposition taken in this cause, states, that the advances were made for the use of Clow & Cay, and were so applied; and, that the bills in question were delivered to Nantes, in order to give him a priority against the estate of Clow & Cay; and that the amount of them was to be carried to the credit of Hadfield, on account of the advances made by Muilman & Company to him for the use of Clow & Cay, and otherwise; and, by that means, to lessen the balance due from Clow & Cay to Hadfield, or, in other words, the bal-

ance due from Hadfield to Muilman & Company.

It further appeared by the evidence, that Hadfield communicated, at all times, freely and fully, to Muilman & Company, respecting the affairs of Clow & Cay; and that the remittances made by Clow & Cay to Hadfield, passed into the hands of Muilman & Company. Hadfield, in his answer and deposition, states that the bills were deposited with him for his own indemnification, as well as to enable him to obtain advances. When Hadfield delivered the bills to Nantes, it was agreed that Nantes should proceed immediately against Clow & Cay; it not being intended that he, Hadfield, was to pay when they became due.

The defendants' counsel objected to the recovery: 1. That these were accommodation bills, sent to Hadfield for a particular purpose, and used for a different one; and this being known to Nantes, he stood in the shoes of Hadfield, and could not recover. The letter from Hadfield to Clow & Cay, of November, 1792, calling for these bills, states, that "they may be useful to support our mutual credit," which shows that they were not merely for the use of Clow & Cay; and, therefore, passed to Hadfield without consideration, or with a knowledge that they were not to return here as protested bills. They cited 3 Term R. 80. 2. The agreement of Nantes, not to resort to Hadfield, defeats his remedy against the drawer, as such an agreement is repugnant to the acceptance, which binds the acceptor absolutely to pay; and such a discharge defeats the remedy over which the drawer might have. Chit. 82, 84; 3 Brown, Ch. 1; 2 Bos. & P. 62; 4 Ves. 829. 3. The debt due from Clow & Cay, if it existed at all, was for the advances made to Hadfield on their account, and on the foot of the guarantee; and it was, therefore, a mere simple contract debt; and Hadfield, as an agent, had no right, after the death of Clow & Cay, to change the nature and dignity of the debt, to one upon protested bills of exchange; which, by the laws of Pennsylvania, have a preference over other debts due from a deceased person. The authority of the agent was superseded by the death of Clow & Cay, and notice thereof to the agent. 4. The antedating the acceptance was an irregularity, contrary to the usual course of mercantile negotiations; and, upon this ground, the plaintiffs cannot recover. It was precipitating the time of payment, which the drawer could not lawfully do.

In answer to these objections by the plaintiffs' counsel, it was said: 1. That though these may be called accommodation bills, yet, they were for the accommodation of the drawers, and to indemnify the drawee for his own advances, or to enable him to raise money upon; consequently, not only Hadfield, but any person making such advances, were entitled to recover upon them. Hadfield, as agent, had a lien for any balance due

him, as well on these bills as upon any other property of the drawers in his hands. Cowp. 251. 2. The doctrine was admitted, in cases where, by the discharge of the drawer, or a prior endorser, you destroy the remedy over which the endorsee might have. That case is unlike the present; for Hadfield, being a creditor of the drawers, to the full amount of the advances made by Muilman & Company for their use, the discharge of the drawee, could not, in any event, affect the rights of Clow & Cay. 3. The bills being deposited with Hadfield, for the purposes before mentioned, he had an interest coupled with his powers as agent, and might endorse the notes for the purpose of his own indemnification, as well after, as before the death of the drawers. 2 East, 227. 4. In cases of bills regularly negotiated, the doctrine contended for is admitted. But this is a peculiar case; and the purpose for which the bills were lodged, impliedly authorized Hadfield to accept or use them, in any manner most likely to effect those purposes.

Messrs. Ingersoll, Lewis, and Binney, for plaintiffs.

Edward Tilghman and Mr. Rawle, for defendants.

WASHINGTON, Circuit Justice (charging jury). These have been called accommodation bills, and, in one sense of the term, they may be so considered; but it does not follow, that an endorsee of them, for a valuable consideration, though with full notice of every circumstance attending them, may not recover. If they were deposited with Hadfield for the accommodation of the drawers, to enable him to raise money for their use, or for his own indemnification; they were given for a consideration, and would give a right of recovery to any person who might choose to purchase, and pay a full consideration of them. Nay, if they had been drawn for the accommodation of Hadfield, and with a view to enable him to raise money upon the credit of the drawers; they, after thus lending their names, could not resist payment to a bona fide purchaser of them, though notice was given at the time of transfer, of the purpose for which they were drawn. Wherever a bill is drawn for a consideration which is illegal, or which happens to fail, neither the payee, nor any subsequent endorsee, with notice, can recover; but that is quite a different case from the present.

The nature of this transaction, the purpose for which these bills were drawn and remitted, and the double character in which Hadfield stood as drawer and agent; furnish answers to most of the objections against the plaintiffs' right of recovery. The bills were sent over with blank endorsements, and were to be used as occasion might require, for supporting the credit of Clow & Cay. No doubt the plan contemplated by Clow & Cay, and also by Hadfield, was to dispose of as many of these bills at a time, as would raise money to enable Hadfield to take up such bills as were becoming due; and in case remittances should arrive in time, again to take up such of these bills, as had been negotiated, and were becoming due, by a negotiation of more of them; so as to postpone the protest of any of them, until remittances should arrive. If Hadfield should be able, from his own funds, or from the aid of friends, to raise money for the above purposes; he was authorized, by Clow & Cay, as he expressly swears in his answer to the defendant's bill in England, to hold or use those bills for his indemnification and repayment; or he might at any time have delivered them over to any person, advancing money for the use of Clow & Cay; and therefore, if he had delivered these bills to Muilman & Company, as they made their advances, or even if the advances had been made upon the security of these bills, and under a promise to deliver them when called for; in the former case, no doubt could exist of the plaintiffs' right to recover; and even in the latter case, I should incline to think that the delivery, after the death of Clow & Cay, might not be open to the objections which have been made. But, as it appears, obviously, that the advances made by Muilman & Co., were upon the credit of Hadfield, backed by the guarantee of Clow & Cay; Hadfield could not, merely upon the ground of those advances, transfer these bills, after the death of Clow & Cay, for the purpose, as Hadfield declares, of giving Nantes a better security. The intention of sending him the bills, having been, to enable him, on the credit of them, to raise money; not to protest them, with a view to securing prior advances, made upon another account. This however, is of very little consequence in the present case; because, if Hadfield has, from his own funds, or from those of Muilman & Co., advanced for Clow & Cay, a sum equal to the amount of the bills in suit, he thereby became a creditor of Clow & Cay, to that amount; no matter from whom he obtained the money; and in the latter case, being to that amount the creditor of Clow & Cay, and the debtor of Muilman & Co., he had a right, at any time, to pass away these bills, for the purpose of repaying or indemnifying himself; and this brings us to the great question, whether he was a creditor of Clow & Cay, to this or any other amount, at the time he delivered over the bills to Nantes. It must be admitted, that advances, to a larger amount than these bills, were made by Muilman & Co. to Hadfield, for the use of Clow & Cay; but the question is, whether they were not discharged by remittances made by Clow & Cay to Hadfield. In the account stated by the master in England, we find very large sums of money paid by Hadfield for the use of Clow & Cay, leaving at

the end of every month, from February to August. large balances due from the latter to the former. But from that period, remittances came to hand in sufficient abundance to turn the balance in favour of Clow & Cay; and this ultimately settled down to more than £8000. Now, if the advances made by Hadfield during that period, were out of the moneys procured by him from Muilman & Co., and there is not the slightest ground for supposing that they were excluded from the account; then it is plain, that they were ultimately discharged; and as to this question, it is of no consequence whether Hadfield appropriated the remittances to his own use, or paid them over to Muilman & Co.; because, as the plaintiffs' right of recovery can stand only upon the claim of Hadfield to indemnity, if he has been paid, he has been indemnified, and the ground of action is taken away. It is to be remarked, that no accounts were kept between Muilman & Co. and Clow & Cay, but between Muilman & Co. and Hadfield, and between Hadfield and Clow & Cay. If, then, as Hadfield received money from Muilman & Co., he paid it away for the use of Clow & Cay, and charged them with it, as an advance from himself; so soon as he received remittances. they were of course entered to the credit of Clow & Cay; and as far as they extended, discharged those advances. Indeed, it appears from the correspondence between Hadfield and Clow & Cay, that most of the remittances went into the hands of Muilman & Co. That Hadfield is indebted to Muilman & Co. upwards of £19,000, appears by the award made in favour of the latter, and it is as clear that Muilman & Co., at different times, made advances to Hadfield, to an amount exceeding that sum more than five times. These advances, no doubt, enabled Hadfield to support the credit of his different correspondents, as well as his own. But upon what principle, is it to be said, that the balance found due from Hadfield to Muilman & Co. shall be fixed upon the shoulders of Clow & Cay? It is not in proof, that all the advances for Clow & Cay have not been paid to Hadfield, by the remittances made him by Clow & Cay; and if he has failed to pay them over, Muilman & Co. must look to Hadfield for indemnification. It is, certainly, if not a suspicious circumstance, at least one much to be wondered at, that in no part of Hadfield's deposition or answer, does he state that the advances made by Muilman & Co., and applied to the use of Clow & Cay, were not debited in his account with the latter; and in his deposition he states, that the amount of the bills delivered to Nantes, was to be carried to the credit of him, Hadfield, on account of advances by Muilman & Co. to him, for the use of Clow & Cay, and otherwise. so that it is left to conjecture, from this impression, which sum remained unpaid of the advances made by Muilman &

Co., and what portion of these bills were to be applied to the credit of other accounts.

As to the objection, on the ground of the acceptance being antedated, as well as other irregularities attending the negotiation of the bills, I will not say that they would be fatal in a transaction so peculiar in its nature as the present. if Nantes appeared to have been a fair bona fide purchaser, upon the ground of a debt due from Hadfield to him for money advanced to him for Clow & Cay, and from them to Hadfield. still remaining unpaid; because from the nature of the trust reposed in Hadfield, he could not easily negotiate them in the ordinary way, to answer the purposes for which they were deposited with him. The question then, for the jury, will be, whether Hadfield was a creditor of Clow & Cay, for advances to the amount of the bills in question; so as to authorize him or his endorsee to recover upon the ground of indemnity. If not, the verdict ought to be for the defendant; if otherwise, for the plaintiff.

Verdict for the defendant.

[For an action by the same plaintiffs against other defendants, see Perry v. Barry, Case No. 11,000.]