MICHIGAN INSURANCE COMPANY *v.* ESTATE OF HENRY LEAVENWORTH.

*Bill of Exchange. Accommodation Indorser. Revocation of Agency by death of principal.*

A bill of exchange, with the date and time of payment in blank, but complete in all other respects, was indorsed by L. to R. H. & Cɔ. Subsequently and after L.'s death, it was presented by R. H. & Co. to the plaintiffs for discount,

Michigan Insurance Company *v.* Leavenworth.

and the plaintiffs, having no suspicion of L.'s death, and relying on his indorsement, at the request of R. H. & Co. filled the blanks, dating the bill as of that date, and discounted it in the ordinary course of business, and paid the avails to R. H. & Co. *Held*, in an action brought against L.'s estate to recover the amount of the bill,

1st, that L. was to be considered as an accommodation indorser, and that his indorsement carried on its face evidence of an implied authority to R. H & Co., or any *bona fide* holder, to fill the blanks in the bill as they pleased.

2d, But that L., being merely an accommodation indorser, the authority thus conferred was not coupled with an interest, and was revocable by the grantor, and that L.'s death before any act had been done under that authority, was, in itself, an absolute revocation of it, and that R. H. & Co. had no power after that time, to transfer a title to the bill, as against L.'s estate, to the plaintiffs, and therefore that the plaintiffs could not recover.

An indorsement on a blank note or bill of exchange, without sum, date or time or payment, will bind the indorser to pay any sum payable at any time which the person to whom the indorser intrust it chooses to insert. BEN-NETT, J.

A date is not essential to the validity of a note or bill. BENNETT, J.

All powers except such as are coupled with an interest are revoked by the death of the grantor. BENNETT, J.

When a power is revoked by the act of the grantor, notice of the revocation may be necessary; but when it is revoked by his death, the revocation takes effect at once, and any subsequent act done under the power, though without notice of the grantor's death, is void. BENNETT, J.

APPEAL from the decision of the commissioners on claims against the intestate's estate. Trial by the court.

The plaintiffs claimed to recover upon a bill of exchange for five thousand dollars, drawn by J. & J. H. Peck & Co. on H. W. Catlin, dated June 12, 1854, and payable to the order of the intestate at the Union Bank, N. Y., forty-five days after date, indorsed by the intestate to Roelofson, Hatch & Co., by whom it was also indorsed. The signatures of the parties to the bill were admitted.

It appeared from the deposition of the plaintiffs' cashier, which was introduced by the defendant, that the plaintiffs first saw said bill on the 12th of June, 1854, when Roelofson, of the firm of Roelofson, Hatch & Co., presented it to them for discount. At that time the bill was in the same condition as at the trial, except that the date and time of payment were in blank. The cashier,

Michigan Insurance Company *v.* Leavenworth.

at Roelofson's request, filled said blanks, and the plaintiffs then discounted the bill in the ordinary course of business, for Roelofson, Hatch & Co., and the avails were paid to them. The plaintiffs took the paper relying upon Leavenworth's responsibility, supposing that he was living at that time. The witness testified that the plaintiffs would not have taken the bill had they supposed he was not then living. Due and seasonable protest of the bill, and notice to the intestate's estate of its non-payment, were proved.

It further appeared from the defendant's evidence that the intestate died on the 10th of May, 1854.

The county court, at the March Term, 1856,—Peck, J., presiding,—rendered judgment for the defendant. Exceptions by the plaintiff.

*George F. Edmunds,* for the plaintiffs.

The decision below, went on the ground that R. H. & Co. could pass no title to the plaintiffs in the bill, after the death of Leavenworth; *assuming* from the fact that there were blanks in the bill for *date* and *time* of payment *merely,* that Leavenworth was an accommodation indorser, as to R. H. & Co., and that the plaintiffs knew this when they took the bill, and therefore they could get no title to the bill, although ignorant of the death of Leavenworth and acting in good faith, and paying value for it. As the signatures are all admitted, and as the bill is found in the possession of the plaintiffs, who appear on the face of the instrument to be regular indorsees, it necessarily follows (in the absence of any evidence to the contrary, certainly), in law, that the bill was indorsed by Leavenworth to R. H. & Co. by a *full* indorsement in his lifetime, and for a valuable consideration; for, in the absence of any legal invalidity of the instrument on its face, or between prior parties, being established, the law refers the possession to a perfect title. Byles 92, 93, 94.

The issuing and indorsement of such a bill carries with it no evidence of any invalidity or want of consideration. It has already every essential quality of a bill of exchange. It is not like a mere blank signature over which an instrument is to be written. If it had never been intended to have a date or expressed time of payment, it would have been valid and effectual, for a date is of no

Michigan Insurance Company v. Leavenworth.

consequence to the validity of any instrument. H. B. R. 313, Collis v. Emmet; 13 Conn. 27 , Norwich Bank v. Hyde; 8 Wend. 478, Brewster v. McCardell; 7 Cow. 336, Mitchell v. Culver. See also cases cited post.

The leaving of blanks for the date and time of payment, amounted in law to a contract on the part of the prior parties to the bill, to pay at such a time as the holder should appoint. The drawer says to the acceptor, "pay to the order of H. Leavenworth five thousand dollars at the Union Bank, at such time as he or his indorsee shall fix for such payment." Then Leavenworth, the payee, by his indorsement passed over the bill to R. H. & Co., and undertook that the sum should be paid to the order of R. H. & Co., at such time as they should appoint; see cases cited supra. Douglass 513, Russell v. Langstaff; 1 M. & S. 87, Snaith v. Mingay; 5 Cranch 142, Violett v. Patton; 4 Mass. 45, Putnam v. Sullivan; 2 M. & S. 90, Cruchley v. Clarence; 9 Exch. 683, Barfer v. Sterne; Story Pr. N. S. 48; 2 Am. L. C. 555; Chitty on Bills 29 and 56, 156, 214.

As this was the legal effect of the instrument on its face, it carried with it notice of nothing else than what it thus imported.

The existence of the blanks then, does not touch the question of whether the bill was drawn, accepted or indorsed for value, and upon that point the case stands just the same as if the blanks had been filled in the outset by the drawers.

The blanks furnish just as much evidence that Leavenworth stole the bill from the drawers, as that he was an accommodation indorser; they are no evidence of either.

If the conclusion is correct, it can hardly be denied that the legal presumption is that Leavenworth gave value to the drawers for the bill, and received value from R. H. & Co. for it on his indorsement; for it then becomes the common case of the drawing, acceptance, and regular negotiation of a bill of exchange, in which a valuable consideration for every step is always presumed in law, until the contrary is proved.

Then the question arises whether the delivering of this instrument with the blanks then unfilled, by the drawers to Leavenworth, as payee, and his full indorsement and delivery of it to R. H. & Co., operated in law to pass the legal title? If this question is

answered in the affirmative, it effectuates the intention of the parties, and preserves to them the rights which they apparently acquired in the bill, and imposes upon them the duties which they apparently assumed.  If it is answered in the negative, it denies to the payee and indorsee the right to sue upon the bill at all, and thus precludes any remedy against the parties upon whose credit they have parted with their money.  It is true this is an argument "ab inconvienti," but it is proper to be considered when it is sought to invalidate an instrument by forcing a construction against the just intentions of the parties to it.

But upon the sharpest technicality, and the narrowest construction, we insist that this instrument was just as essentially a legal and valid bill of exchange, capable of complete indorsement, with the blanks for date and time of payment unfilled, as if it had been drawn with those blanks supplied.

"A [negotiable] bill of exchange is a written order from A to B, directing B to pay C [or order] a sum of money therein named." Byles on Bills 1; Chitty on Bills 1.  "It imports a debt due from the drawee to the drawer, which is assigned to the payee." 21 Wend. 501, *Griffith* v. *Reed*; Chitty 1.

"A date, however, is not in general essential to the validity of a bill."  Chitty 148; Byles 57.

"A bill or note on which no time of payment is specified is payable on demand."  Byles 165.  They are "valid although no time of payment be mentioned in them, and would operate as payable on demand."  Chitty 150.

Technically, then, the bill was perfectly valid without any date or time of payment; blanks, therefore, for those purposes could not affect the title to be transferred in it by indorsement.  A promise to pay on demand, and a promise to pay on a day to be appointed by the holder are of equal validity.

As the case stands, therefore, the result is that the plaintiffs took a perfect title to the bill, unless it can be made out that the appointment of the time for payment, after the death of Leavenworth, vitiates it as an illegal alteration.

As this was a right of the holder, to be exercised on his own authority and in his own behalf, and flowing from his legal posses-

sion of the paper as a party to it, it could be as well exercised *after* the death of any of the prior parties as *before*.

It was not to be done in his name, nor was his consent necessary to it, any more than to the indorsement itself. His death would no more destroy the right to appoint the *time of payment,* than it would the right to appoint *the person to whom* payment should be made, as in case of a blank indorsement. *Cope* v. *Daniel*, 9 Dana 415; Story P. N. S. 48; 13 East 517, *Passmore* v. *North;* 12 Mass. 206, *Cutts* v. *Perkins;* BAYLEY J. in *Snaith* v. *Mingay;* see also 3 Man. & G. 565, *Billings* v. *Devaux,* (42 E. C. L.)

Although the death of a person revokes all authorities which are to be exercised in the name of such person, it does not, we submit, annul his contracts or limit the rights which others have acquired *in the form of* an *independent title* from or through him, even if such title is a naked trust, if it be passed to third persons acting *bona fide* and paying value.

But even if the death of Leavenworth could be supposed to cut off the right to fill these blanks, the filling them innocently and in ignorance of his death, would not destroy the validity of the bill, as one payable on demand.

The presentment etc., is good as upon a bill thus payable. Or, if it could possibly have that effect at law, it would not in equity; and as this is an appeal from probate, this court can protect the equitable rights of the plaintiff.

But if this is to be treated as an indorsement of Leavenworth, without consideration and for the accommodation of R. H. & Co., they would thereby become invested with the *legal title* to the bill, as an instrument operative on its face, even as between the parties. It is true they could maintain no action on the bill against Leavenworth, not because they had not the legal title, but because the indorsement was without consideration. R. H. & Co. would have acquired just as perfect a title to and right of disposing of the the bill, as they would have to a tract of land of which Leavenworth had given them a legal conveyance without consideration, to aid their credit. In such a case they would have no real right to it as against Leavenworth, but it will hardly be said that they might not convey it after his death to a person giving value for it

and having no notice of his death. 1 Am. L. C. 555; 20 Pick. 549, *Wheeler* v. *Guild*, SHAW, Ch. J.; 1 Bos. & P. 648, *Collins* v. *Martin;* Byles 121; 6 Exch. 63, *Barber* v. *Richards;* 12 N. H. 317, *Clement* v. *Leverett;* 8 Vt. 301, *Snow* v. *Conant;* 21 Vt. 331, *Keyes* v. *Wood.* A consideration is not necessary to pass the title to a bill, by indorsement. It may be merely in trust for collection; it may be for the accommodation of the indorsee; in either case he could sue all the prior parties except his immediate indorser. As to what is a *bona fide* taking, see Chitty 240; 4 Ad. & El. 879, *Goodman* v. *Harvey.*

If this were an accommodation bill, and that fact was known to the plaintiff, it would furnish no defense (Byles 98), unless, indeed, the plaintiffs knew of the death of Leavenworth. In that case the plaintiffs would take a title to the bill by the indorsement of R. H. & Co., but it may be that they could maintain no action against Leavenworth's estate, on the ground that, as R. H. & Co. were the mere trustees of Leavenworth, a conveyance by them to one having notice of the trust, and that the *cestui que trust*, had withdrawn his consent to a further conveyance, could give them no better standing than R. H. & Co. had.

The distinguishing feature in this case is, that *the bill was in the possession of a party who, upon the face of the bill, appeared to be a legal holder, having a right of action upon it against the prior parties*, instead of its being passed to the plaintiffs by the drawers, who upon the face of the paper could maintain no action against Leavenworth. The cases cited by the defendant are mainly of the latter kind or depend upon principles analogous.

If a bill, drawn and indorsed for value with blanks like these, is a valid and negotiable instrument on its face, it is equally so if it be an accommodation bill, for the legal construction of the instrument itself must necessarily be the same (as the instrument is the same) in both cases.

The legal effect of the death of the indorser upon the power of the indorsee to fill the blanks or negotiate the bill, must also be the same, for in both cases the *legal interest or title* in the instrument is the same; and it is such interest and not a mere *equitable* one that prevents the revocation by death. It may be true that the indorsee, after notice of the death, would have no right to negotiate

3

the bill, not on account of a want of the legal power which follows the legal title, but because it would be an abuse of the trust.

*Jacob Maeck* and *Levi Underwood,* for the defendant.

The plaintiffs in this case discounted the draft in question on the day it bears date, which was after the decease of Leavenworth, and is not, therefore, entitled under the probate laws of this state, to prove the claim. *Blackmer* v. *Admr. of Blackmer,* 5 Vt. 355 ; *Leavenworth, Admr.,* v. *Lapham,* 5 Vt. 204.

The plaintiffs' claim to recover must be sustained (if it can be sustained,) upon the ground that an indorsement of a note in blank, upon the face of it, without the aid of extrinsic evidence, in law amounts to an authority to any person to date it and fill it up at such time as they please after the death of the indorser. Upon this point, we insist that the law makes this fact *evidence only* of an authority in fact, which the court below has determined against the plaintiffs.

It would at most be but an authority which might be revoked at any time before the note should be delivered, and being so, it is *ipso facto* revoked by the death of Leavenworth. *Michigan State Bank* v. *Estate of Leavenworth ; Clarke* v. *Boyd,* 2 Ohio ; *Clarke* v. *Sigourney,* 17 Conn. 522 ; *Galt* v. *Galway,* 4 Pet. 332 – 4 ; Story on Agency ; Paley on Agency, 185 – 6 – 7 ; *Blady* v. *Free,* 17 E. C. L. 83 ; *Hunt* v. *Rousmaniere,* 5 U. S. Cond. 400 ; *Raw* v. *Alderson,* 7 Taunt. 453.

The indorsee acquires no title to an indorsed note or draft until it is delivered by the indorser ; and if the note or draft is imperfect upon its face, it must be filled up before it goes into circulation, otherwise it must be treated as a note on demand or sight draft. If there is no delivery until after the indorser is dead, it can never be delivered as his indorsement of his note or draft. *Clarke* v. *Boyd,* 2 Ohio ; *Clarke* v. *Sigourney,* 17 Conn. 522 ; *Woodford et ux.* v. *Dorwin,* 3 Vt. 82 ; *Chamberlain* v. *Hopps,* 8 Vt. 94 ; *Bromage* v. *Lloyd,* Wels. H. & G. (Exch.) 32.

If it is treated as in circulation at the time of Leavenworth's decease, as a sight draft, the alteration of it by the plaintiffs to a draft on time, vitiates it as against Leavenworth, who was dead at the time and could not be presumed to give his assent to it.

We insist that the court below has found that the draft in question was never delivered to any one as a perfect draft, until it was delivered to the plaintiffs after they had filled it up, and the plaintiffs knew that it had not been perfected when they discounted it, and they were bound to know whether their indorsers, upon whom they relied, were in *esse* at the time.

The opinion of the court was delivered by

BENNETT, J. This is a case of very considerable importance, and has received a full and matured consideration from the counsel engaged in it; and it may be thought to be a case not entirely, perhaps, free from difficulty. No question has been raised in argument in this court, but what there was a seasonable and a due protest and notice of the non-payment of the bill, to the estate of Mr. Leavenworth, to charge it with the payment of the bill. It is found in the bill of exceptions, that Mr. Leavenworth died on the 10th day of May, 1854, and the material facts upon which the defense arises, are contained in the deposition of K. K. Sawyer, the plaintiffs' cashier. Those facts are, that this bill on which the action is predicated, was, for the first time, found by the plaintiffs in the hands of Wm. Roelofson, of the firm of Roelofson, Hatch & Co., and by him presented to the plaintiffs for discount on the 12th day of June, 1854. The paper or bill was then in the same condition it now is in, excepting that the date and time of payment were in blank. These were then filled by the plaintiffs' cashier at the request of Roelofson, so that the bill now bears date the 12th of June, 1854, and is made payable forty-five days after date; and after these blanks were filled, it was discounted by the plaintiffs in the ordinary course of business, they relying upon the indorsement of Mr. Leavenworth; and the proceeds of the discount were placed at the control of Roelofson, Hatch & Co., who on the same day drew out the deposit. Though Mr. Leavenworth died some thirty days or more before the bill was presented for discount, yet it is a part of the case that the plaintiffs had no notice or suspicion of the existence of such a fact at the time ; and that, if they had had any such suspicion, they would not have discounted the bill.

The first question arising in the case, is whether the issuing and

indorsement of such a bill carries with it evidence of an *implied authority on its face*, to a *bona fide* holder, to fill the blanks in the manner in which they were filled in this case? It is well settled law, that an indorsement on a blank note, without sum or date or time of payment, will bind the indorser to pay any sum, payable at any time, which the person to whom the indorser intrusts it chooses to insert. See *Russell* v. *Langstaff*, Douglass 496 ; *Snaith* v. *Mingay*, 1 M. & S. 87 ; *Violett* v. *Patton*, 5 Cranch 147 ; *Putnam* v. *Sullivan et al.*, 4 Mass. 45 ; *Norwich Bank* v. *Hyde*, 13 Conn. 281 ; *Mitchell* v. *Culver*, 7 Cowen 336 ; and *Mechanics' and Farmers' Bank* v. *Schuyler et al.*, 7 Cowen 337, (note *a*). If a man gives the use of his name to another in blank, it operates, as was said by Lord MANSFIELD in the case in Douglass, as a letter of credit to an indefinite amount; and if the name of the payee is simply left blank, a *bona fide* holder may insert his own name as payee. *Collis* v. *Emmett*, 1 Henry Blackstone 313 ; *Cruchley* v. *Clarence*, 2 M. & S. 90. In the case in 13th Conn., the sum in the body of the note was left blank, but it had a marginal mark of two hundred dollars, and the court held that a *bona fide* holder of it might fill the blank with any sum not exceeding the marginal mark. These cases all go upon the ground of an *implied power*, which is *indefinite* unless there is something in the case to limit it; and if there is an implied power to fill all the blanks, which may be left in a note, it must follow, as was held in the two cases cited in 7 Cowen 336, 337, that it must equally exist to supply the blank, if only one be left. In the present case, the date and time of payment only were left blank. The sum was limited to five thousand dollars. It is well settled that a date is not essential to the validity of a bill or note, and the time of its execution, when necessary, may be inquired into by parol; and it will be computed from the day the note or bill was issued. Neither is it necessary that a time of payment should be expressed in the note or bill. If none is fixed, they are payable on demand.

Although this bill, when indorsed by Leavenworth, may have had on its face all the essential requisites of a valid bill, though without date and without any time of payment expressed in it, yet it is evident the parties did not intend to put it in circulation in the condition it was then in, but something further was to be done. It

being indorsed with a blank date and a blank for the time of payment, carried with it evidence of an authority from the parties to the bill, to a *bona fide* holder of it to fill the blanks as he should find necessary ; and this was, no doubt, the ground upon which the plaintiffs' cashier acted in filling the blanks at the suggestion of Roelofson. Until the blanks were filled the instrument was inchoate, and was not what the parties intended it should become before it was put in circulation; and hence there is no ground to claim that the filling of the blanks was such an alteration of the bill, as would invalidate it in the hands of the plaintiffs. This, no doubt, was contemplated by Mr. Leavenworth when he indorsed the bill.

This *implied power* might have been well found as a fact by the county court, who tried the cause. The bill of exceptions says, " the court, *among other things*, found the facts stated in the depositions attached to the case to be true." It may well be intended that the county court found any fact which there was evidence tending to prove, and which may be necessary to sustain their judgment. This case cannot stand upon the ground that the bill is one payable on demand and without date. No such bill was intended to be indorsed or delivered to the plaintiffs ; and it was clearly the intention of the parties that no such bill should be received. If the plaintiffs assume the ground that the bill was a perfected instrument, and nothing further to be done with it, before the blanks were filled, it would result that the alteration would avoid the paper. But the important question in the case is, whether Roelofson, Hatch & Co. could, after the death of Leavenworth, cause the blanks to be filled in the manner in which it was done, and pass the title in the bill to the plaintiffs by their indorsement, in such a way as to bind the estate of Leavenworth.

It may be true that if Roelofson, Hatch & Co. had been sued upon their indorsement of the bill, they could have made no objection to the action on the ground of the *previous* death of Leavenworth ; but the question now is, what should be the effect of the death of Leavenworth upon the liability of his estate ? It is to be assumed upon the face of this bill that Leavenworth was an accommodation indorser, as much so as if the sum, date and time of payment had all been left blank. He, in effect, by his blank indorsement, gave a letter of credit to Roelofson, Hatch & Co. for

a limited amount, and as this was the effect of the instrument on its face, it carried notice with it to the plaintiffs — at least sufficient to put the party on inquiry — that Leavenworth stood upon the paper as an accommodation indorser, and it was upon this ground no doubt, that the plaintiffs' cashier assumed the right to fill the blanks. The cashier acted in good faith, and in ignorance of the fact of Leavenworth's decease, and the plaintiffs paid value for the bill; but still the question is, what must be the effect of his *previous death?* This being accommodation paper, no one would claim that Roelofson, Hatch & Co. could maintain an action against the estate of Leavenworth on his indorsement; and the question is, do the plaintiffs, being chargeable with notice, from the face of the paper, that Leavenworth was but an accommodation indorser, stand upon any better ground. In the case of *Dogan* v. *Dubois*, 2 Richardson (S. C.) Eq. Rep. 85, it was held that an accommodation indorser of a note to be discounted in bank, may before the note is discounted, recede from his agreement, and direct the bank not to receive the note, and that such indorser will not be liable to a third person, who takes the note with such notice. That case is based upon principle, and goes upon the ground that the power conferred by the indorsement, was in its nature *countermandable*, and that when countermanded, no one, *with notice*, had a right to act upon the hypothesis that the power still existed. I think no one will question but what, as between Leavenworth and Roelofson, Hatch & Co., his death, *per se*, operated to revoke the authority to fill the blanks and to subsequently put the paper in circulation. It is a common principle that an authority conferred by a letter of attorney, is revoked by the death of the principal, unless it be in cases where the authority is coupled with an interest. In the present case, the power conferred upon Roelofson, Hatch & Co. by the indorsement, to fill blanks and negotiate the paper, as between the immediate parties, is clearly a naked power, conferred without consideration, and not being coupled with an interest, there can be no ground to claim it would survive after the death of Leavenworth. Though it may be true that when a power is revoked by the act of the party, notice may be necessary, yet when revoked by *his death*, the revocation at once takes effect, and if an act is subsequently done under the power, though without notice of the death of the

party, the act is void, and there is the best reason in the world for this fundamental distinction. It is an event of which each party has equal means of knowledge, and must take notice of it at their peril. If the plaintiffs had been apprised of the death of Leavenworth at the time they took the paper, it could hardly be claimed they would have acted in good faith in taking it, relying upon his indorsement; and their rights should not, in such an event, be superior to the rights of Roelofson, Hatch & Co.; but as they took the bill without such notice and paid value for it, it is an important question in commercial law, which of the present parties must sustain the loss. In the case of the *Michigan State Bank* v. *Estate of Leavenworth*, 28 Vt. 210, the intestate in conjunction with Wilkins and Catlin, addressed to the plaintiffs in that action a letter of credit, authorizing Roelofson, Hatch & Co. to draw on them or either of them through their bank, to an amount not exceeding thirty thousand dollars, which they jointly and severally agreed to accept and see paid, if not paid by the drawers at maturity. Leavenworth was a mere surety, and it was held that his death operated to determine the right to draw upon him or upon his responsibility, although the bank had no notice of his death, and the time in which Roelofson, Hatch & Co. were allowed to draw by the terms of the letter of credit, had not then, in point of fact, expired. To show what is the doctrine of the law in relation to the determination of an authority by the death of the person from whom the authority emanates, and when the authority *is so coupled with an interest*, that it will not expire with the death of the person creating it, the following cases may be referred to. See Bacon Ab. Title Authority, F.; *Houstoun* v. *Robertson*, 6 Taun. 448; *Lepard* v. *Vernon*, 2 Veasy & Beames 51; *Blades* v. *Free*, 9 Barn. & Cress. 167; *Smout* v. *Ilbery*, 10 M. & W. 1; *Burgess et al.* v. *Bennett*, 1 Caine's Cases in Error 15; *Knapp* v. *Alvord*, 10 Paige 205; *Hunt* v. *Rousmaniere's Adm'rs*, 8 Wheat. 174; S. C., 1 Pet. 1; *Galt* v. *Galway*, 4 Pet. 344. Although the answer to the question, when will the authority be so coupled with an interest that it will survive the person from whom it emanates, may be in some little confusion in the books, yet we think this is a case of a naked authority, beyond any doubt, *voidable* by the grantor of it, at his pleasure in his lifetime, and was absolutely revoked by

his death before there had been any action under it. The paper being indorsed as accommodation paper, and not for value paid by Roelofson, Hatch & Co., they had no interest connected with the power and consequently no interest to be affected by the revocation. We see no sufficient reason why the case of the Michigan State Bank in 28 Vt. 209, must not govern this as to this point. The paper was strictly commercial paper in that case, and the bank discounted it relying upon the letter of credit, and it had no notice of the death of Leavenworth until after the discount of the bills then in question.

The court considered that the bills drawn after the death of Leavenworth by Roelofson, Hatch & Co., were drawn, so far as he was concerned, without authority, and that his estate could not be charged with the payment of such bills, though the bank were *bona fide* holders of the bills and paid value for them. In the case of *Usher* v. *Dauncey*, 4 Campb. 97, a partnership used to draw bills with blanks for sums and dates to raise money upon. One of the partners drew a bill on the 28th day of February to his own order, and indorsed it in blank, and died on the 15th of March. On the 22d of April the clerk to the surviving partners filled the blank for a date with February 27th, and also filled the blank for the amount at the same time, and an agent of theirs got the paper discounted.

In a suit against the surviving partners it was claimed that the death of the partner who drew the bill payable to his order, and by him indorsed blank as to date and sum, countermanded all authority in the clerk to fill the blanks, and that the bill was void. But it was held by Lord ELLENBOROUGH that the clerk's authority emanated from all the partners, and that, when the clerk filled up the blanks in the bill on account of the surviving partners and for their use, he acted as their agent, and bound them, and that the case was within the principles of the case of *Russell* v. *Langstaff.* The court of King's Bench affirmed the ruling at *nisi prius.* That case proceeded upon the ground that the objection would have been well taken, if the suit had been against the estate of the deceased partner as an indorser of the bill. In *Clarke* v. *Sigourney*, 17 Conn. 510, it was held that an executor had no authority to deliver a note, as a note indorsed by the testator, after his death,

from the fact that the note was among his papers with his name indorsed blank upon it.

In reply to the position that an authority was to be implied from the payee to his executrix to deliver the note after his death, as a note indorsed by him, STORRS, J., who delivered the opinion of the court says (p. 523), that such an inference can not justly be made, and if it could, "any such authority must have been determined by his death." See *Galt et al.* v. *Galway*, 4 Peters 332, 344. In *Clarke* v. *Boyd*, 2 Ohio 56, it was held that an executor had no power to deliver a note to the plaintiff which was found among the papers of the payee, and by him *indorsed to the plaintiff* so as to transfer a title in the note to him. See also *Brimage* v. *Lloyd*, 1 Exch. Rep. 32, a case very full on this point. In the case of *Woodward et ux.* v. *Dorwin*, 3 Vt. 32, it was well held that a note signed by a partnership, but not delivered to the payee until after the dissolution of the firm, did not bind it, and that a note only takes effect from the time of its delivery. See also *Chamberlain* v. *Hopps*, 8 Vt. 94.

Delivery by the indorser is as essential to the validity of the transfer of an indorsed note as it is to a promissory note between the maker and payee. This bill being treated as accommodation paper in the hands of Roelofson, Hatch & Co., there existed in Leavenworth a right to countermand their authority to put the bill in circulation in his lifetime, and the effect of his death was in law a countermand of it; and as a result, Roelofson, Hatch & Co. had no power to transfer a title in the paper to the plaintiffs, as against the estate of Leavenworth, and could not bind his estate, either in law or equity. Though notice would have been necessary in case of a personal countermand of the authority by Leavenworth, yet the plaintiffs were bound to take notice of his death at their peril. *Smout* v. *Ilbery*, 10 M. & W. 1; *Blades* v. *Free*, 9 B. & C. 167; and the case does not fall within the principle of those cases where a power has been given by implication to fill blanks, and negotiate paper, and there has been an abuse of the power, while it was still *out standing*. In such a case the rule is applied, that where one of two innocent persons must suffer, the loss should fall on the indorser on account of his negligence or misplaced confidence, rather than on an innocent and *bona fide*

holder, who is not chargeable with any neglect. In the case of *Perry* v. *Crammond*, 1 Wash. C. C. Rep. 100, advances were made upon the faith of a bill for *the use of the drawer* to his agent, who had possession of the bill, and it was indeed held, that the agent, after the death of the drawer, might transfer the bill to the person making the advances, só as to give him a right of action against the estate of the drawer. In that case, the advances being for the benefit of the drawer, *the power*, as I think, *was coupled with an interest;* and of course, not revoked by the death of the drawer. The case of *Passmore* v. *North*, 13 East., is quite unlike the case at bar. In that case the drawer of the bill was the defendant in the action, and the plaintiff, as an indorsee, claimed title to the bill through the payee, who indorsed it for a *valuable consideration.* The bill was in fact drawn and delivered to the payee on the 4th of May, but *post dated* the 11th, and was indorsed to the plaintiff by the payee on the 5th of May, who died the same day, and of course, before the bill bore date. The only point decided in that case was, that the post dating of the bill would not vitiate it, or nullify the effect of a prior indorsement by the payee. The bill was a perfect one at the time the payee indorsed it, on the 5th of May, and the post date to it only regulated the time of its payment, it being payable sixty-five days from date, which of course meant its actual date upon the face of the paper. The effect of the indorsement being perfect at the time it was made on the 5th of May, could be in no way controlled by the *post date*,of the bill, being subsequent to the death of the indorser. The case of *Cutts, Administrator* v. *Perkins*, 12 Mass. 206, to which the plaintiffs' counsel have referred us, was not decided upon the ground that the draft was a valid bill of exchange by the law merchant; but it operated as an assignment of the money, that should become due for the freight; and that the death of the drawer, before the bill came to the hands of the payee would not operate to defeat its effect, as an assignment of the money to become due for the freight, and that the drawee was fully justified in accepting and paying the draft after the death of the drawer. But in that case, it might well be inquired whether the power conferred by the drawer upon the drawee, might not be said to have been coupled

with an interest. The drawee was debtor to the drawer for freight and the payee was a creditor of the drawer.

The power was given for the purpose of raising money for paying a debt due from the drawer to the payee, by a transfer of a debt due from the grantee of the power to the drawer.

The case of *Snaith et al.* v. *Mingay et al.*, 1 M. & S. 37, has been much relied upon by the plaintiffs' counsel, but we apprehend that case will not warrant a judgment for the plaintiffs in this case. The bills were signed and indorsed in the name of the firm in Ireland by a house established in business there, and two of the members of the firm lived in Ireland, leaving blanks for the date, sums, times when payable, and the names of the drawees. These copperplate blanks were sent to the other partner in London, who lived there, and to be used by him for his individual use. The bills when sent had the appropriate *Irish* stamps upon them, for the respective sums inserted in them, but were not legal stamps, if treated as bills drawn in England. It was held that when these bills were filled up in England in pursuance of the authority given to the correspondent of the drawers, the instruments became Irish bills of exchange. There was no pretense of any design to defraud the stamp laws of either country. We see no objection in referring the acts in that case in filling the blanks, which created the bills perfect instruments, to the place where they first had their inchoate existence. The party to whom the bills were sent in England to be filled, acted in pursuance of an authority conferred upon him by the signature attached to the blanks in Ireland, where the house was located, and the acts in filling the blanks which rendered them perfect bills, having emanated from the house in Ireland, may well be referred to the place where the paper had its *incipient* existence. This is all which that case decides.

What is said by BAYLEY, J., in regard to the estate of the *drawer* being liable to an innocent indorsee, in case of his death while the bill was on its way to London, is only by way of argument on supposition. But suppose it be granted that if the blanks had been filled and the bills negotiated to an innocent indorsee, the estate of the drawee would have been liable, notwithstanding the drawer died while the bills were on their passage, that would not decide this case. In such a case as was supposed by Justice

BAYLEY, the indorsee would be chargeable only with notice of such facts as appeared upon the face of the bill. The bill when taken by the indorsee, would have been a perfect bill upon its face and to be taken as one drawn for value; while, in the case at bar, Mr. Leavenworth stood as an accommodation indorser, and the present holders, from the face of the paper, were chargeable with notice of such fact.

The case of *Baker et al.* v. *Sterne*, 9 Exch. Rep. 684, cited by the plaintiffs' counsel is, in principle, like the case of *Snaith* v. *Mingay*, 1 M. & S. 87. A blank form of a bill of exchange was signed by a house in Bavaria, and sent to a commission house in London, who were in the habit of receiving consignments of goods from the drawer. The commission house having been advised of a consignment of goods, filled up the blanks by inserting the date, amount, etc., and got the bill accepted by the defendant, and indorsed it *bona fide* to the plaintiffs for value, and applied the avails to their own use. It was objected that the commission house in London had only authority to fill up the blanks to obtain payment of the goods consigned to them, and that it was in effect a bill drawn in London, and therefore required a stamp; but, it was held, this was not an *inland* bill, and did not require a stamp. The objection of course assumed that the plaintiffs were *bona fide* holders of the bill for value, and not chargeable with notice of any instructions to fill up the blank form for any particular purpose. This was well considered to be a bill of exchange from the time of the signing the blank in Bavaria, and that no stamp was necessary.

The case of *Billing* v. *Devaux et al.*, cited from 42 Common Law 297, seems to have little or no bearing upon the case before us. The action in that case was brought by the payee of a bill against the drawers, and the case finds that there was an absolute promise on the part of the drawees to pay the bill, which constituted a valid acceptance. It is clear that in, such a case, the death of the drawer of the bill before an acceptance, can not vary the rights and liabilities of the parties thereto. The liability of the defendants by means of their promise to pay the bill, does not rest upon a question of agency but upon a promise, and it is well said by MAULE, J., in this case, that if a man, when he enters into a contract, does not intend to be bound in the event of the death

of the party with whom he contracts, he should introduce such a stipulation into the contract.

We think the right of Roelofson, Hatch & Co. to fill the blanks and negotiate the paper as against Leavenworth, rests in a question of agency, and that his death, *ipso facto*, determined the agency; and that, consequently, no right of action in the paper was transferred against the estate of Leavenworth to these plaintiffs.

Judgment affirmed with costs.