CARRIGER'S ADMINISTRATOR, Respondent, v. WHITTINGTON'S ADMINISTRATOR, Appellant.

1. A. constituted B. his agent and authorized him to sell a pre-emption claim belonging to him; B. sold the land and received the purchase money; the sale was made after the death of A. but in ignorance thereof and in good faith; the purchase money was paid to B. after knowledge on his part and on that of the purchaser of the death of A. *Held,* that A.'s representatives were entitled to recover of B. the purchase money so received.

*Appeal from Buchanan Court of Common Pleas.*

This was an action by the administrator of Christian Carriger to recover certain sums of money alleged to have been received by William W. Whittington, defendant's intestate, as the agent of said Carriger. Evidence was introduced that in 1846 said Carriger had a pre-emption claim; that he went to California leaving Whittington his agent; that he received the rents accruing, and also sold the claim to one De Witt; that he received in 1847 fifty dollars for rent of this land; in 1848 twenty dollars; that in 1850 he received from De Witt five hundred dollars, the purchase money agreed to be paid for the pre-emption claim; that Carriger died in 1846 on the way to California. It did not appear that his death was known to Whittington and De Witt at the time of the sale. The court instructed the jury as follows: "If the jury believe from the evidence that William Whittington, as the agent of Christian Carriger, received of Neff, in the spring of 1847, fifty dollars, and in the spring of 1848, of Patton, twenty

dollars, and in the spring of 1850, of De Witt, five hundred dollars, with interest, for the price of Carriger's farm, and that the plaintiff, Charles F. Holly, as public administrator of Andrew county, has charge of said Carriger's estate, they will find for the plaintiff the amount so received by said Whittington."

The court refused the following instructions, among others, asked by defendant: " 1. Unless the jury believe from the evidence that Christian Carriger was alive at the time William Whittington made the sale and received the money in evidence, they will find for defendant. 2. If the said William Whittington was the agent of Christian Carriger, deceased, and received the money in evidence as such agent, then the jury will find for the defendant, unless the plaintiff has proved that said money was demanded before the commencement of this suit. 5. If more than five years have elapsed since said money was received and before suit, they will find for defendant. 6. If the jury find from the evidence that Carriger merely authorized William W. Whittington to sell for him, the said Carriger, the land mentioned in evidence, then so soon as said Carriger died said Whittington had no further authority to act as such agent; and if he was so dead at the time of said sale then the jury will find for the defendant."

*Vories*, for appellant.

The court erred in refusing the first and sixth instructions asked by defendant; (Story on Bail. § 488; Hunt v. Rousmanier, 8 Wheat. 174;) also in refusing the other instructions asked by defendant; (Cocherill v. Kirkpatrick, 9 Mo. 697; Greenl. Ev. 82—8; 16 Mo. 478; Benton v. Lindell, 10 Mo. 559;) also in giving the instruction asked by plaintiff.

*Loan*, for respondent.

I. The court properly refused the instructions asked by defendant.

NAPTON, Judge, delivered the opinion of the court.

It does not appear in this case whether at the time of the sale of the pre-emption by Whittington to De Witt the death of the principal, Carriger, was known to the parties or not. It is inferable that at the time of the payment of the purchase money to the agent, in 1850, Carriger's death was known to both parties. It is probable that when the contract was made in 1847, Carriger's death, which took place in the previous summer on his way to California, was not known to either.

Although by the common law an agency terminated by the death of the principal, and all subsequent acts of the agent cease to bind his heirs or executors, yet judicial tribunals, especially those having equitable jurisdiction, have, for the convenience of trade and commerce and in accordance with the principles of natural justice, very much modified this doctrine. When the death of the principal is unknown to both parties at the time the contract is made, so that there is no binding contract on him or his representatives, the agent is not personally responsible. (Smout v. Ilbery, 10 Mees. & Wels. 1; Story on Agency, § 265; Blader v. Free, 9 Barn. & Cress. 167.) In Cassiday v. McKenzie, 4 Watts & Serg. 282, the Supreme Court of Pennsylvania declared in good sense and sound reason there was no difference between a revocation of an agency by the act of the principal and a revocation by his death, which was the act of God, and that in either case, where the parties dealing were acting in good faith and ignorant of the revocation, the principal or his representatives ought to be bound. In neither case did the court suppose the agent would be; and they repudiate the opinion of Lord Ellenborough, in Watson v. King, 4 Camp. 5 Esp. 117, and of Lord Loughborough, in Tate v. Hilbert, 2 Ves. jr., —, where a power of attorney, though coupled with an interest, was held to be instantly revoked by the death of the grantor.

To determine the case now under consideration it is not important to inquire whether the heirs of Carriger have any

claim upon the purchaser De Witt, or not, for the land or pre-emption right, or whether the collection of the purchase money from Whittington by Carriger's administrator would have any bearing, either in law or equity, upon the determination of that question. It is manifest that the purchaser is, under the circumstances, without recourse upon the agent Whittington, and this is all which it is material to decide in allowing this recovery on the part of Carriger's administrator. It is clear from the testimony that when the money was paid over by De Witt to Whittington, both the agent and the purchaser were aware of Carriger's death, and this circumstance would relieve the agent from personal responsibility as much as if both parties had been ignorant of the principal's death. (Story on Agency, § 265.) In addition to this, the purchaser De Witt was a witness at the trial, and interposed no objections to the recovery. On the contrary, he was a witness for Carriger's representative. Should it turn out that Carriger's heirs have title to the land, he could not look to Whittington, as he not only had notice of the death of Carriger at the time of the payment to Whittington, but is also fully notified of this proceeding to compel the agent to pay over to the principal. As the purchaser is the only person who could be injured by this proceeding, and he does not offer to interplead, it may be assumed that he is satisfied with his title to the land, or would as soon rely upon the responsibility of Carriger's representatives as upon that of Whittington's.

There is nothing in the objection to the want of a demand in this case. The administrator would have no authority to pay money on demand. A claim against him must first be allowed by the probate court, and a demand would have been useless.

Nor is there any thing in the objection raised on the statute of limitations. That statute did not commence running until the grant of letters of administration.

The other judges concurring, judgment affirmed.