## Lenz and another vs. Brown, Adm'r.

*(1)* CONTRACT: *Consideration.* *(2)* AGENCY. *When authority of agent continues after death of principal.* *(3)* JUDGMENT: *Form of, on claim against estate.*

1. Defendant's intestate, being under contract with plaintiffs to pay them a certain indebtedness out of the proceeds of a saw-mill owned by her, afterwards, by her agent, who acted for her in the getting out of logs, running of the mill and payment of her debts, agreed with plaintiffs that they would let her retain the proceeds of the mill until April 15th following, in consideration of which she would buy of them groceries and supplies, provided they would give her as good prices as she could get

Lenz and another vs. Brown, Adm'r.

elsewhere in a certain village, they allowing a certain sum for each car load of lumber from the mill, which was to be shipped to plaintiffs' account. *Held*, that this was a valid contract, the agreement of plaintiffs to suspend the operation of the previous contract being a sufficient *consideration* on their part, and defendant's intestate being bound on her part to purchase of plaintiffs the supplies she wanted, upon the conditions named.

2. Defendant's intestate died several weeks before said 15th of April; but her said agent continued up to that date to order supplies as before; it does not appear that plaintiffs knew of her death when they furnished such goods; and the supplies were necessary to preserve the estate. *Held*, that the estate was liable for all supplies so furnished, the case falling under the exceptions to the general rule that the authority of an agent terminates upon the death of the principal.

3. On appeal from an allowance of plaintiffs' claim against the estate, the circuit court rendered judgment allowing the claim and a certain sum for costs, and concluding thus: "for which amount [stating the aggregate] judgment is now rendered in favor of the plaintiffs and against the defendant." *Held*, that this is in effect an allowance of the claim against the estate, and is sufficiently formal.

APPEAL from the Circuit Court for *Oconto* County.

Plaintiffs filed, in the probate court of said county, an account against the estate of Lydia Ann Hall, deceased, for groceries, etc., furnished to said deceased, or to her agents, upon her credit, between February 29 and April 17, 1873. The whole amount of the debit charges in said account was $699.23; and there was a credit, under date March 27, "by draft on Blanchard, Borland & Co., on account of lumber," for $306.03, leaving the balance claimed $393.20. The items charged prior to March 29, 1873, amount to $242.73; those charged on or after that date, to $456.50. The county judge allowed the amount of said account, with interest from April 15, 1873, as a claim against the estate; and the administrator *de bonis non* appealed from such allowance to the circuit court. In that court the plaintiffs claimed that in February, 1873, they entered into a contract with Lydia Ann Hall, through R. L. Hall as her agent, by which they undertook to furnish to her groceries, provisions, etc., and to receive in payment lumber

to be manufactured at the portable saw-mill of said Lydia Ann
Hall in Oconto county; that this contract did not expire un-
til April 15, 1873; that they furnished to R. L. Hall, as such
agent, at different times between February 27 and April 17,
1873, under said contract, the goods named in said bill of ac-
count, to the amount there stated, and received in lumber
only to the amount there credited, which left said balance in
their favor of $393.20; that at the time of and after the death
of Mrs. Hall, which occurred on the 21st of March, 1873, R. L.
Hall, her son, was in possession of the saw-mill, getting out logs,
sawing lumber and operating the mill, as her agent; that the
goods named in said account were furnished under said contract
to be used in the operation of the mill, and were so used; and
that those furnished after Mrs. Hall's death were necessary
for the preservation of the estate. The administrator, on the
other hand, insisted that R. L. Hall was not Mrs. Hall's agent
when he made the contract, was not authorized by her to make
it, and did not make it, or the alleged purchases under it, for
her benefit or use, but for his own benefit and use; that Mrs.
Hall's death terminated his agency, if one ever existed; that
plaintiffs knew of such death as early as April 5, 1873, and
could not recover for goods furnished after that time; and
that the claim had been paid.

The plaintiffs introduced the testimony of R. L. Hall,
tending to show that he had represented himself as the agent
of Mrs. Hall, from September, 1872, to April, 1873, in getting
out logs and running said saw-mill and in business connected
therewith, and that Mrs. Hall consented to such representa-
tion. The witness then identified various letters addressed to
the plaintiffs at Green Bay, and signed "L. A. Hall, by R. L.
Hall, Agent;" and other letters signed by the plaintiffs, and
addressed to Mrs. Hall at Oconto. The substance of the first
two of these letters, dated respectively February 15 and Feb-
ruary 19, will sufficiently appear from the opinion. The other
letters tended to show that the propositions made by plaintiffs

on February 19, were accepted the next day by Mrs. Hall through her said agent, and that plaintiffs continued to ship goods in pursuance thereof, during the period covered by their account. It appears that the goods charged under date April 17, were sent upon an order made prior to April 15. The general effect of the evidence furnished by these letters, and by the testimony of R. L. Hall and others, is stated in the opinion. All this evidence was objected to on the ground that R. L. Hall's agency had not been shown; so much of it as related to goods furnished after Mrs. Hall's death, was objected to on the ground that such agency, if any, was terminated by that event; and so much as related to the charge of April 17, on the further ground that this was after the date to which plaintiff agreed to furnish goods, and also after administration had begun on the estate.

It appears that the portable mill in question was left out of the inventory of Mrs. Hall's estate, in consequence of R. L. Hall's claim, acquiesced in by the other heirs, that after all the debts were paid, including the amount secured by Mrs. Hall's mortgage to the plaintiffs, the mill was to become the property of R. L. Hall.

The court instructed the jury, among other things, 1. That while, as a general rule, the death of the principal ends the authority of the agent, this rule would not be applied so as to cut off the claims of parties who in good faith have contracted with the agent in the lifetime of the principal, nor to cases where goods have been furnished which were necessary to preserve the estate from loss or injury. 2. That if, at the time of writing the letters put in evidence by the plaintiffs, R. L. Hall was Mrs. Hall's agent, or accustomed to represent himself as such, for the transaction of business connected with the portable mill and running the same, getting out timber, etc., and if Mrs. Hall knew of his making such representation and consented to his doing so, or did not object to it, that would render her and her estate liable to third parties contracting in

good faith with R. L. Hall, while acting or representing himself to be acting as her agent, if they relied upon such representation, believing it to be true. 3. That upon the suppositions just stated, the letters between the parties of February 15, 19 and 20, constituted a good contract between Mrs. Hall and the plaintiffs; that if all the goods mentioned in plaintiffs' bill were furnished to R. L. Hall under this agreement, they must find for the plaintiffs for the whole amount claimed; that Mrs. Hall's death previous to the furnishing of a portion of the goods did not affect the liability of her estate, if such goods were furnished in pursuance of a contract and during its existence; and that said contract did not terminate until April 15, 1873. 4. That if the goods furnished after Mrs. Hall's death, to R. L. Hall, were furnished to be used by him in the care and preservation of Mrs. Hall's property, left in his hands by her death, and before the appointment of an administrator, or were necessary to continue operations already commenced, which could not be suspended without damage to the estate, and if such goods were furnished upon the credit of Mrs. Hall or her estate, then they must find for the plaintiffs as to such goods, even if plaintiffs knew of her death.

The defendant asked the following among other instructions: "If the goods purchased from the plaintiffs by R. L. Hall as agent of Mrs. Hall, previous to her death, were paid for before her death, and if those purchased by him after her death were purchased for his own benefit and use, for the purpose of operating the portable mill to his own profit under an understanding with his brother and sister that he could take the mill and run it for the purpose of paying certain of his own debts, and that after they were paid he could have the property as his own, then your verdict must be for the defendant." The court refused to give the instruction as asked, but gave it after modifying the second clause, so as to read as follows: "and if some of the goods were purchased after her death, by

R. L. Hall, *and plaintiffs knew* that the goods were purchased for his own use and benefit," etc.

The jury found that plaintiffs were entitled to recover $393.20, without interest. The court rendered judgment affirming the allowance of the county judge to the amount of $393.20, and for $56.48 costs of suit; and the judgment concluded with the following words: "For which amount ($449.68) judgment is now rendered in favor of the plaintiffs and against the defendant." From this judgment the defendant appealed.

For the appellant, a brief was filed by *Fairchild & Fairchild*, and the cause was argued orally by *H. O. Fairchild.* They argued the following, among other points:

1. The ratification of R. L. Hall's acts, to be binding, must have been made by Mrs. Hall with full knowledge of all the material facts; and whether it was so made is a question for the jury; but the court assumed the existence of such knowledge, and that mere silence on her part amounted to a ratification. *Ætna Ins. Co. v. N. W. Iron Co.*, 21 Wis., 458; *Ladd v. Hildebrant*, 27 id., 135, and cases there cited. There was no evidence that Mrs. Hall had any knowledge that R. L. Hall was representing himself as her agent, or that she knew he was having any dealings with them whatever. *Walters v. Monroe*, 17 Md., 150. Again, it did not appear that plaintiffs knew that R. L. Hall was accustomed to represent himself as Mrs. Hall's agent, or how she had treated such representations. If they were not induced by her conduct to give the credit, defendant is not estopped from denying the agency. 2. The agreement contained in the letters was void for uncertainty and for want of mutuality. *L'Amoreux v. Gould*, 7 N. Y., 349; *Holtz v. Schmidt*, 59 id., 253. 3. Being thus void in its inception, the contract could receive vitality only by the subsequent acts of the parties under it; i. e., the shipment of lumber under it, and the ordering of goods of a certain description, by Mrs. Hall, and the furnishing of supplies under

it by plaintiffs.   Each purchase and sale under the agreement was in effect the making of a new contract, taking effect from the doing of the act, and not from the making of the original arrangement.   *Holtz v. Schmidt, supra.*   4. The contract was *personal*, since plaintiffs bound themselves, if to anything, to supply only such goods as *Mrs. Hall* might order for the operation of the mill.   It could not have been presumed, that in case of her death the personal representative, or any one in his stead, could be authorized to carry on the business.   3 Redfield on Wills, 274, § 6, note 8; id., 278, § 11; *Dickinson v. Calahan*, 19 Pa. St., 227; *Yerrington v. Greene*, 7 R. I., 589, and cases there cited in brief of counsel; *Jennings v. Lyons*, 39 Wis., 553, and cases there cited.   5. If the agreement was a valid continuing contract, binding upon Mrs. Hall during her lifetime, and upon her estate after her death, still it could not be carried out after her death, by one authorized, during her life, to act as her agent.   The death of the principal terminates the agency, except in certain cases not applicable to the facts shown here.   Story on Bailm., § 205; Story on Agency, §§ 488–9; 2 Livermore on Agency, 301, 304; *Hunt v. Rousmanier's Adm'rs*, 8 Wheat., 174; *S. C.*, 2 Mason, 244; *Galt v. Galloway*, 4 Pet., 332, 344; *Rigs v. Cage*, 2 Humph., 350; *Saltmarsh v. Smith*, 32 Ala., 404; *Harper v. Little*, 2 Greenl., 14; *Gale v. Tappan*, 12 N. H., 145; *Gleason v. Dodd*, 4 Met., 333.   The personal representative alone is authorized to carry out the continuing contracts of the intestate.   He is the instrument provided by law for the settlement of the estate, and he alone is required to give bonds for the faithful performance of the trust.   6. In regard to the personal property left at the portable mill, the administrator's title and right of possession related back to the death of Mrs. Hall.   *Beecher v. Buckingham*, 18 Conn., 110; *Perkins v. Stone*, id., 270; *Valentine v. Jackson*, 9 Wend., 302; *Babcock, Adm'r, v. Booth*, 2 Hill, 181; *Gilkey v. Hamilton*, 22 Mich., 283, and cases cited in the brief of

plaintiffs in error; 1 Parsons on Con., 111; 3 Redf. on Wills, 20, 21, 23 and note 6; *Cullen v. O'Hara*, 4 Mich., 132; *Morton v. Preston*, 18 id., 71; 12 Met., 425; 34 N. H., 407. The administrator must account to the ultimate distributees, and as owner he sells, disposes of and contracts as his judgment dictates. *Ferrin v. Myrick*, 41 N. Y., 319; *Williams v. Ely*, 13 Wis., 1; *Munteith v. Rahn*, 14 id., 210; *Cleveland v. Harrison*, 15 id., 670; *Hitchcock v. Merrick*, id., 522; *Roys v. Vilas*, 18 id., 169. As an incident of his title and right of possession, the burden of preserving the property is upon him, and relates back to the moment of the intestate's decease. Expenses thus incurred are a part of the expenses of administration, but are not charges upon the estate in any other manner. *Austin v. Munro*, 47 N. Y., 366; *Casoni v. Jerome*, 58 id., 321; *Ferrin v. Myrick*, 41 id., 315; *Reynolds v. Reynolds*, 3 Wend., 244; *De Mott v. Field*, 7 Cow., 58; *Myer v. Cole*, 12 Johns., 349; *Bucklin v. Chapin*, 1 Lans., 443; *Fish v. Morse*, 8 Mich., 34. He is not an agent of the intestate or of the estate, and is not allowed to contract in its behalf. 3 Redf. on Wills, 288, § 42, and cases above cited. One left in charge or possession of the property by the intestate's death, is obliged to preserve and protect it, is entitled to all legal remedies for that purpose, becomes responsible to the administrator for the property, and can deliver it to no one but him or some one having a better right than himself (*Cullen v. O'Hara*, and *Morton v. Preston*, *supra*); and necessary expenses incurred by such person for the protection of the intestate's personal estate, prior to the appointment of the administrator, may be recovered *from the administrator, but not from the estate.* Tay. Stats., 1240, § 10; *Gilkey v. Hamilton, supra; Patterson v. Patterson*, 59 N. Y., 585.

*W. J. Lander*, for respondents:

1. The express consent of Mrs. Hall that R. L. Hall should act as her agent in operating the portable mill and selling the products, etc., or her consent that he should represent himself

as so acting, or her neglecting to object to such act or represen-
tation, made her liable, and her estate after her death, upon any
contract in respect to the business of said mill, made by him
in her name. 1 Parsons on Con. (5th ed.), 47 et seq.; Story
on Agency (8th ed.), §§ 90 et seq., 253–260; *Emmons v. Dowe*,
2 Wis., 322; *Lachner v. Salomon*, 9 id., 132; *Dodge v. Mc-
Donnell*, 14 id., 553; *Mallory v. Mariner*, 15 id., 173; *Ames
v. Drew*, 31 N. H., 475; *Fay v. Richmond*, 43 Vt., 25; *Per-
kins v. Ins. Co.*, 4 Cow., 645; *Commercial Bank of L. E. v.
Norton*, 1 Hill, 501; *Johnson v. Jones*, 4 Barb., 369; *Sorrel
v. Brewster*, 1 Mich., 373; *Hammond v. Hannin*, 21 id.,
374. 2. The three letters of February 15, 19 and 20, consti-
tuted an entire contract, to continue till April 15, 1873; the
former contract being absolutely suspended until that date,
by the terms of such new contract. R. L. Hall had had a
power given him by his mother to run the mill in her name,
and apply the proceeds to pay the debt to plaintiffs; and when
the mortgage on her property should be paid, he was to have
the mill. This agency was irrevocable during her life, and
could not be revoked by her death, because it was a power
coupled with an interest, and was given him for a valuable
consideration, to wit: his promise to run the mill in her name
and pay the mortgage, and plaintiff's promise to suspend the
operation of the former contract until April 15, 1873. 1 Kent's
Com. (12th ed.), 646; 1 Parsons on Con. (5th ed.), 69–73;
Story on Agency (8th ed.), 643–667; 1 Chitty on Con. (11th
ed.), 279–280; *Hunt v. Rousmanier's Adm'rs*, 8 Wheat., 174;
*Davis v. Lane*, 10 N. H., 156; *Fabens v. Mercantile Bank*,
23 Pick., 330; *Houghtaling v. Marvin*, 7 Barb., 412; *Carri-
ger's Adm'r v. Whittington's Adm'r*, 26 Mo., 313; *Lewis v.
Kerr*, 17 Iowa, 73; *Marziou v. Pioche*, 8 Cal., 522. 3. As
far as the rights of third parties are concerned, the agency
continued until they had actual notice of the death of the prin-
cipal, or at least until after the lapse of such a period of time
that they would in law be presumed to know or be able to

know of such death, by the exercise of due care and diligence. Especially is this so where the act to be done is not necessarily to be in the name of the principal, as in the present case, where the ordering of goods and shipping of lumber might have been done by the agent in his own name. 1 Bell's Com., §§ 413 et seq.; 1 Chitty on Con. (11th ed.), 280; Story on Agency (8th ed.), 655; Thomson on Bills (2d ed.), 224–227; 2 Am. L. C. (5th ed.), 361; *Cassiday v. McKenzie*, 4 Watts & S., 282; *Ish v. Crane*, 8 Ohio St., 520; *S. C.*, 13 id., 574; *Beard v. Kirk*, 11 N. H., 397; *Davis v. Lane*, 10 id., 156; *Dick v. Page*, 17 Mo., 234; *Hazard v. Treadwell*, 1 Strange, 506; *Harrison's Case*, 12 Mod., 346. 4. The agent has power after the death of his principal, in the absence of any other representative of the estate, to complete a particular transaction already commenced; and especially, in order to preserve the estate from loss and to protect it, he may purchase necessary goods, and bind the estate by such purchase. Story on Agency (8th ed.), 654–7; Story on Bailm., § 204; 1 Bell's Com., § 413. 5. The objection that the claim for goods after Mrs. Hall's death is one against the administrator, and that there is a misjoinder of parties or causes of action, cannot be taken for the first time on this appeal. But it is proper to join such causes of action, and to name the estate as defendant. *La Crosse v. Melrose*, 22 Wis., 459; *McNight v. Estate of McNight*, 20 id., 447; *Tryon v. Farnsworth*, 30 id., 577; Tay. Stats., 1228, § 15. 6. If the estate of Mrs. Hall is not liable for goods purchased after her death, then, as the credit of $306.03 is also subsequent to her death, and no particular application of it was made by R. L. Hall to pay the debt contracted during her life, plaintiffs have a right to apply it in payment for the goods sold after her death. 2 Parsons on Con. (5th ed.), 629; *Stone v. Talbot*, 4 Wis., 442; *Robbins v. Lincoln*, 12 id., 1; *Otto v. Klauber*, 23 id., 472.

COLE, J. The undisputed evidence shows that R. L. Hall

was the agent of Lydia Ann Hall in operating the saw-mill, and in carrying on the lumber business at Oconto, in the fall and winter of 1872–3, at the time the contract for supplies was made with the plaintiffs. The title of this mill was in Mrs. Hall, who had assumed the indebtedness of R. L. Hall due the plaintiffs, and had mortgaged her property for its payment. It appears that she had entered into a contract with the plaintiffs in November, 1872, for the payment of this indebtedness by the proceeds of the mill. R. L. Hall at this time was acting as her agent in getting out logs and running the mill, and in the general management of the business. These facts are clearly and conclusively established by the testimony. The learned circuit judge, however, submitted to the jury the question whether, in the months of January and February, 1873, when the letters offered in evidence were written, R. L. Hall was the agent of Mrs. Hall, or was accustomed to represent himself as her agent for the transaction of the business connected with the mill, and operating the same, and whether Mrs. Hall knew of his making these representations, and consented to them, or did not object. If so, the court held that Mrs. Hall and her estate would be liable to third parties contracting with the agent in good faith, relying upon these representations and believing them to be true. According to our view of the case, the circuit court might have directed the jury that the fact of agency was fully shown; for it is inconceivable, under the circumstances, that R. L. Hall should thus be operating her mill, shipping lumber, managing her business and discharging her debts, unless with her authority. As a matter of fact, the witness Pierce testified that he had heard Mrs. Hall say " that Richard was her agent, looking after her business, the portable mill," etc.; and from the nature and circumstances of the case, the inference is irresistible that he was acting as her agent in these various business transactions.

This brings us to a consideration of the contract in regard

to the supplies. By the letter of February 15, 1873, Mrs. Hall, through her agent R. L. Hall, made a proposition to the plaintiffs that they should let her retain the proceeds of the mill until April 15th following, for which she offered to pay them a reasonable consideration. She proposed to buy of them groceries and supplies as she was then doing, provided they would give as good prices as she could get anywhere in Green Bay, they allowing a certain sum for each car-load of lumber, to be agreed upon, which was to be shipped to the plaintiffs' account. The plaintiffs replied, February 19th, in substance, that they acceded to the offer to receive lumber for groceries and provisions, and agreed to furnish, for every car-load of straight mill-run lumber, $40 worth of goods, such as might be ordered, on receipt of the bills of lading, until the 15th of April next, provided Mrs. Hall would strictly commence again on that day to ship lumber to fill the existing contract entered into on the 19th of the previous November. This was the basis of the arrangement; and we cannot see why it did not become a binding contract upon the parties. Certainly the suspension of the stipulations of the existing agreement until April 15th was a sufficient consideration for the contract. And it is obvious that Mrs. Hall distinctly bound herself by the arrangement to order of the plaintiffs whatever groceries and supplies she might need in carrying on her lumber business up to that time, and they to furnish $40 of such goods for each car-load of lumber shipped to their account, the balances on the sales of lumber to be adjusted on final settlement. It is true, the quantity of goods which should be ordered and furnished was not specified; but still we do not think the contract was void for that reason. In the case of *Holtz v. Schmidt et al.*, 59 N. Y., 253, to which we were referred upon this point, the court held, under the arrangement, that "the plaintiff did not agree to purchase wines or liquors of Schmidt & Co., nor did they agree to sell the plaintiff or comply with any orders he might draw upon them. Either party was at liberty

to decline to enter upon the contemplated dealing." But this could not be said of the obligations of the parties in the case before us. Mrs. Hall could not refuse to buy of the plaintiffs the goods she wanted, provided they would furnish them at as low prices as she could procure them for elsewhere in Green Bay; nor could they refuse to sell the stipulated amount for each car-load of lumber. It appears that the parties acted under this contract; and all the goods which the plaintiffs seek to hold the estate of Mrs. Hall liable for, were actually ordered by the agent, R. L. Hall, before the 15th of April, when it expired by its own terms. Mrs. Hall died on the 21st of March, but R. L. Hall continued to order goods after that time as before, and the plaintiffs as usual to fill the orders. The evidence, however, does not show that the plaintiffs knew of the death of Mrs. Hall when they furnished the goods. Now the question is, Can the estate be held liable for the goods ordered and furnished after the death of Mrs. Hall? The able and ingenious counsel for the administrator insists that it cannot be. He says, admitting the contract to be a valid, continuing one, binding upon Mrs. Hall during her lifetime, still that it was incapable of being executed after her death, for the reason that all authority of the agent is extinguished by the death of the principal. The general rule is indisputable, that the death of the principal operates as a revocation of the authority of the agent to act. But this general rule has its exceptions. "Where the act, notwithstanding the death of the principal, can and may be done in the name of the agent, there seems to be a sound reason why his death should not be deemed to be a positive revocation under all circumstances, and that a subsequent execution of it may be valid." Story on Agency, § 495. This precise question has received a most able and exhaustive discussion by SUTLIFF, J., in *Ish v. Crane et al.*, 8 Ohio St., 520, who vindicates the soundness of the principle stated by Judge Story. We could add nothing valuable to the discussion of the question, should we enter upon

it. We content ourselves with saying that the case before us seems to come within the exception. It was not necessary that the orders for the supplies should be in the name of the principal. The supplies were absolutely essential for the completion of the lumbering transactions already commenced. They were indispensably necessary to preserve the estate. At the time of the death of Mrs. Hall, the mill was in operation, and there were employed about the mill and in the woods, getting out logs, quite a number of men and teams. It would be impossible to suspend operations at once without loss to the estate. It seems unreasonable to hold, under such circumstances, that, because of the death of Mrs. Hall, no supplies or provisions for the men and animals could be ordered, and bind her estate. No administrator could be immediately appointed to represent the estate or act for it; and unless the agent could act in the execution of the contract, it is manifest that much loss would result to all interested in the estate. Reason and justice would seem to require that the agent have power to act after the death of the principal in such a case. Principles of public policy, and the interests of trade and commerce, require some qualification of the rule of the common law — if it be a rule,— that the authority of the agent is extinguished by the death of the principal, when the act can and may be done in the name of the agent. It is obvious that in this case the supplies could be lawfully ordered in the sole name of R. L. Hall. There is the more reason for this rule, as it is altogether probable that the plaintiffs furnished the goods in ignorance of the death of Mrs. Hall. We therefore think the estate is liable for the goods furnished under the contract after her death.

Some objection is taken to the judgment; but it appears to be sufficiently formal. It amounted to an allowance of the claim against the estate.

The judgment of the circuit court must therefore be affirmed, and the cause remanded for further proceedings.

*By the Court.*—So ordered.