The Farmers' Loan and Trust Company, as Guardian, etc., Respondent, *v.* Elbert C. Wilson, Appellant.

The power of an agent to collect and receive rents falling due to his principal, ceases upon the death of the latter, unless the agency is coupled with an interest, and payment made thereafter to the agent does not bind the estate of the principal, although made in ignorance of such death.

The fact that the agent is entitled to commissions on rents collected does not give him such an interest as will continue his power after death of his principal; the interest which will have this effect must be an interest in the thing itself, *i. e.*, the property or the rents as such.

Reported below, 64 Hun, 194.

(Argued June 28, 1893; decided October 3, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 9, 1892, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Circuit without a jury.

This was an action to recover rent claimed to be due under a lease.

The facts, so far as material, are stated in the opinion.

*Hugo Hirsh* for appellant. The plaintiffs failed to prove their case. They should have proven, if they could, that Corbett had not accounted to them, or to the legal representatives of the deceased, for the rent received by him from defendant. (*Turner* v. *Kowenhoven*, 100 N. Y. 115.) Corbett's agency was not immediately revoked by the death of Madden, and notice, either actual or constructive, should have been given defendant of Madden's death. (*Claflin* v. *Lenheim*, 66 N. Y. 301; *Williams* v. *Birbeck*, Hoff. Ch. 359; *M. Bank* v. *B. C. Co.*, 5 N. Y. Supp. 23; *Blake* v. *Garwood*, 42 N. J. Eq. 276; Whart. on Agency, §§ 90–104; *Cassidy* v. *McKenzie*, 4 W. & S. 282; *Wilson* v. *Stewart*, 5 Penn. L. J. 450; *Carragher* v. *Whittington*, 26 Mo. 204; *Ish* v. *Crane*, 8 Ohio St. 520; *Knapp* v. *Alvord*, 10 Paige, 205; *Miller* v. *Ponder*, 55 N. Y. 325; *Houghtaling* v. *Marvin*, 7 Barb. 412; *Bank of New York* v. *Vanderhorst*, 32 N. Y. 553; *Weber* v. *Bridgman*, 113 id. 606; *Hess* v. *Rau*, 95 id. 359; *Hunt* v. *Rousmanier*, 3 Wheat. 174; *Tate* v. *Hilber*, 2 Ves. 111; *Grappel* v. *Hodges*, 112 N. Y. 419.) Defendant had the right to assume that Corbett was a general agent and manager, with full and complete power and control over the property as if he were the principal himself. (*Gilbert* v. *Dishon*, 107 N. Y. 327.)

*Turner, McClure & Rolston* for respondent.

O'Brien, J. The plaintiff, as general guardian of infants, heirs and devisees of one William Maden, has recovered judgment against the defendant for rent claimed to be due under a lease of certain real estate, executed in the lifetime of the testator. Maden died in Cuba on the 6th of August, 1884, having by will devised the real estate in Brooklyn, the rent of which was claimed in this action, to his infant children, who are represented by the plaintiff. He had been for many years before his death a resident of Cuba, and the owner of the real estate in question. The will was duly proved and established under the laws of that country on the 27th of August, 1884,

and such proceedings were afterwards had here that it was admitted to record in the office of the surrogate of New York on the 10th of June, 1885, and the plaintiff was appointed guardian December 19, 1888. The real estate had been for many years managed and rented by an agent of the owner, who acted under a verbal authority. The judgment was for rent accruing under the lease subsequent to the death of the owner from the month of September, 1884, to and including the month of May, 1885. It is undisputed that the defendant paid all the rent claimed to the agent subsequent to the death of his principal, but as it does not appear that the agent ever accounted for the same, the sole question presented by this appeal is whether the defendant is protected by such payment in this action. On the 8th of April, 1884, the testator, by his agent, and the defendant, executed the lease which appears to be under seal, acknowledged and recorded. By this instrument Maden, who is described as " of Cortenas, Island of Cuba," demised to the defendant for the term of five years from May 1 thereafter the buildings in respect to which the rent is claimed to have accrued, at the yearly rent of $3,500, payable monthly in advance. The lease contains a provision for renewal for five years, at $4,000 per year, payable in like manner. The defendant, on his part, covenanted to pay the rent as stipulated and to surrender the premises at the expiration of the term. The defendant had, during the four years prior to the execution of this lease, occupied the premises as tenant under agreement with the agent, and had paid the rent to him, and it appears that the defendant never had any personal dealing with the owner, though he knew he was in fact the landlord and where he resided. At the time that the defendant paid the rent in question to the agent neither of them had any knowledge or information in regard to the death of the owner.

The rule is well settled by authority that the power of an agent to collect and receive payment of rents falling due to his principal, when such power is not coupled with an interest, terminates and ceases upon the death of the principal, and

that payment made thereafter to the agent does not bind the estate of the principal, though the payment be made in ignorance of the principal's death. (*Weber v. Bridgman*, 113 N. Y. 600.) The rule seems to have originated in the presumption that those who deal with an agent knowingly assume the risk that his authority may be terminated by death without notice to them. The case of an agency coupled with an interest is made an exception to the rule. (*Grapel* v. *Hodges*, 112 N. Y. 419; *Hunt* v. *Rousmanier*, 8 Wheat. 204.) It is urged that the exception applies to this case for the reason that the agent was entitled to commissions upon the rents collected, and to be allowed his disbursements for repairs, insurance and taxes. The trial court refused to find that he had such an interest as would prevent the revocation of the power upon the death of the principal. There was no proof to show that the agent, at the time of the death, had any claim on account of repairs, insurance or taxes, and, therefore, it is needless to inquire how far, if at all, these elements, if shown to exist, would change the case. It may be assumed that the agent was entitled to compensation for his services, in the form of commissions, upon the money collected, while the agency was in force. But this would not give him such an interest as would continue his power after his principal's death. Agents are quite frequently paid by commissions upon sales of property, or upon moneys collected, and to hold that this constitutes such an interest as would save the power from revocation by the death of the principal, would be, in effect, to abrogate the rule in most cases. The interest which can protect a power after the death of the person by whom it was created, must be an interest in the thing itself. The power must be engrafted upon some estate or interest in the thing to which it relates. (*Hunt* v. *Rousmanier*, *supra*.) Here the agent had no estate or interest in the property nor in the rents as such. The most that can be said is that he was entitled to commissions upon what was to be produced by the exercise of the power, and hence it cannot be said that the power and the interest are united in the same person at the time of their

creation. It cannot, we think, be claimed for a moment that the principal, in the creation of the power, conferred upon the agent any interest in the subject to which it was intended to relate. At no time could the agent act except in the name of his principal, and a power thus limited must necessarily cease with the death of the person in whose name it is to be exercised. The learned counsel for the defendant in an interesting and ingenious argument, has attempted to take this case out of the operation of the general rule, but, while much impressed with the equity of his position, we have not been able to make any satisfactory distinction between the facts as they appear in the record and those that appeared in the cases to which reference has been made. The result which we feel constrained to reach will illustrate how a rule or principle of law will operate harshly and produce what might seem to be injustice in a particular case. This conclusion must, however, be modified when we consider that either the defendant or the infant children of the deceased must bear the loss which has occurred by the default of the agent. The defendant could have foreseen what has happened and protected himself against loss by insisting upon payment to the owners alone, or by proper stipulations in the lease. There can be no doubt that a party may, by his contract, estop his personal representatives or his estate from recovering money paid to his agent in good faith, after his death, under such circumstances as appear in this case, but we see no reasonable way that the children of the owner, who are the real plaintiffs in this case, could have avoided the result. The presumption that every man knows the law implies that they will act with reasonable caution and vigilance in their business affairs, and that in entering upon contracts or carrying them out they will become informed by competent advice of the risks and dangers that beset them. When a man knowingly deals with the agent of a principal who resides in a foreign country, it must be assumed that he will guard against the perils that the transaction necessarily involves, and while courts are disposed to exercise all their power to relieve parties who have acted in

good faith, from the result of their neglect to provide, in the first instance, against accidents which might have been foreseen, there seems to be no way open for such a result in this case, without disregarding or refining away an important rule of law. This would practically be judicial legislation. We feel bound to follow the current of authority, and to leave the work of reforming the law on this question, if reform be necessary or desirable, to the legislature.

There would seem to be an incongruity in the law of agency with respect to the effect of a revocation of the agent's powers by the act of the principal himself and a revocation produced by his death. In the former case, the revocation does not affect third parties, dealing with the agent in good faith, without notice. (*Claflin* v. *Lenheim*, 66 N. Y. 301; *Williams* v. *Birbeck*, Hoff. Ch. 359; *Blake* v. *Garwood*, 42 N. J. Eq. 276; Wharton on Agency, §§ 99–104; Story on Agency, § 470.) While in the latter, as we have seen, the revocation operates upon all parties, without notice, unless the power is coupled with an interest, in which case the agent may execute it in his own name, notwithstanding the death of the principal. The civil law protected third parties who dealt in good faith with the agent without notice in all cases, whether the power was revoked by the act of the principal or his death, but as Chancellor KENT has observed this equitable principle does not prevail in the English law (2 Kent Com. [13th ed.] 646), from which the rule that obtains in this state was derived, though in other jurisdictions, and perhaps in England, the harshness of the common law has been modified by statute. (*Weber* v. *Bridgman*, *supra*, p. 602.) The common-law rule has become too firmly established in this state to be disturbed by judicial action, though a change by the law-making power would be in harmony with more enlightened views and would promote the interests of justice.

The judgment must, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.