JOHN W. GLENNAN, as Administrator with the Will Annexed de Bonis Non of JOHN CALLAHAN, Deceased, Appellant, *v.* ROCHESTER TRUST AND SAFE DEPOSIT COMPANY, Respondent.

*Banking* — payment of check of depositor after death thereof — administrator cannot recover amount of such check if bank had no knowledge of depositor's death.

Although a check, by itself, is a mere order for the payment of money, not operating as an assignment of any part of the fund, the authority of the drawee or the bank to pay which may be revoked

or countermanded by the drawer, and although the death of the principal revokes the jurisdiction of the agent to collect the check under the general rule that death revokes an agent's power, even as to third parties dealing with the agent in good faith and without notice, yet the payment of checks by banks is an exception to the rule. Where a bank has paid a check drawn by a depositor, but without knowledge of his death and in the due course of business, the administrator of such depositor cannot recover from the bank the amount so paid, although the check was not presented to or paid by the bank until after the death of the depositor.

*Glennan* v. *Rochester Trust & Safe Deposit Co.*, 152 App. Div. 316, affirmed.

(Argued May 6, 1913; decided June 3, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 26, 1912, affirming a judgment in favor of defendant entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harlan W. Rippey* for appellant. It was error to charge the jury that the bank would be protected if it paid the money upon the check in due course of business without notice of Callahan's death. It was also error to refuse to charge that the bank was not authorized to pay the check unless it was accepted before the death of Callahan. (*Hunt* v. *Rousmanier*, 8 Wheat. 174; *Bank of Republic* v. *Millard*, 10 Wall. 152; *Fordred* v. *Seaman's Bank*, 10 Abb. Pr. 42; *Davis* v. *Windsor Savings Bank*, 46 Vt. 727; *Long* v. *Thayer*, 150 U. S. 520; *Weber* v. *Bridgeman*, 113 N. Y. 600; *Pullen* v. *Placer Co. Bank*, 71 Pac. Rep. 83; *Second Nat. Bank of Detroit* v. *Williams*, 13 Mich. 282; *Podmore* v. *B. Sav. Inst.*, 48 App. Div. 218; *Mahon* v. *So. Brooklyn Sav. Inst.*, 175 N. Y. 69.)

*A. P. Whipple* and *William N. Cogswell* for respondent. The bank is protected if it paid the money upon the

check in due course of business without notice of Callahan's death, and the court's charge to that effect is without error.    Any other rule of law would make the banking business a particularly hazardous one.    (2 Daniels on Neg. Inst. 569; *Davis* v. *Windsor Sav. Bank*, 46 Vt. 728.)

CULLEN, Ch. J.    The action is brought by the plaintiff as administrator of a depositor in the defendant trust company to recover the amount of a deposit made by the intestate.    The defense was payment and an assignment of the deposit by the intestate to a third party.    The payment proved was that of a check drawn by the intestate but not presented to or paid by the defendant until after the death of the former, of which the defendant claimed to be ignorant.    While the case was submitted to the jury on both issues, the jury was directed to answer specific questions of fact, one of which was: "Did the bank pay the money without knowledge of the death of John Callahan (plaintiff's intestate) and in the due course of business?"    This question the jury answered in the affirmative.    If the finding required a verdict in the defendant's favor, as the trial court charged, it is not necessary to consider the other rulings on the trial of which the appellant complains, as they do not affect this issue.

It is singular that there should be such a paucity of judicial decisions on this question, as seems to be the case. In my search through the reports I have been able to find only one on the precise point, *Rogerson* v. *Ladbroke*, decided by the English Common Pleas in 1822 (1 Bing. 93), in which it was held that the payment or rather the charge of a check to a depositor's account made by the banker after the death of the depositor, but before the bank had received knowledge of that fact, was a valid payment and that the banker was not liable for the amount.    There is another case often cited to the same

effect (*Tate* .v. *Hilbert*, 2 Vesey, Jun. 112) where the lord chancellor expressed the opinion that if the holder of a check had collected the money from the banker after the death of the drawer, but before the banker had knowledge of death, no court would take the money away from her. This was purely obiter, simply the chancellor's opinion, for, as a matter of fact, the suit in which the opinion was expressed was dismissed and the complainant remitted to her action at law. On the other hand, none of the cases cited by the learned counsel for the appellant is authority for the contrary proposition. The greatest reliance is upon *Davis, Admr.,* v. *Windsor Savings Bank* (46 Vt. 728). There a woman from time to time deposited certain sums of money in a savings bank to the credit of her brother, in whose name the pass book was issued. The jury found that these moneys were the property of the brother and had been collected by the woman on his account. After the death of the brother, but before notice of that death had reached it, the defendant paid the amount of the account to the woman who presented the pass book. It was held that death revoked the agency of the plaintiff and that the payment was bad. No question of the payment of a check was involved in this case, for there was none. As to the other cases cited, *Fordred* v. *Seamen's Savings Bank* (10 Abb. Pr. Rep. [N. S.] 425) was an action by the holder of a check against the bank, which refused to pay it. Of course, in this state no such action could be maintained whether the drawer was dead or alive. In *Podmore* v. *South Brooklyn Savings Institution* (48 App. Div. 218) payment was made by the bank after knowledge of the death of the depositor to one who presented the pass book, claiming the deposit .as a gift *causa mortis* from the deceased. As the jury found there was no gift, the defense failed. Here, again, no question of a check was involved. This is the same case which is reported in this court on a subsequent appeal

under the title of *Mahon* v. *South Brooklyn Savings Institution* (175 N. Y. 69). In *Pullen* v. *Placer County Bank* (138 Cal. 169) the check was paid not only after the death of the drawer but after the defendant had been informed of the death, as is stated in the opinion of the court. But while there is this paucity of judicial decisions on the subject, there seems to be absolute unanimity in the rule as declared by the leading text writers. Chitty on Bills (*429), Byles on Bills (Sharswood ed. p. 22), Parsons on Notes and Bills (Vol. 2, p. 81), Story on Promissory Notes (§ 498a), Edwards on Bills and Notes (§ 739), Morse on Banks and Banking (§ 400) and Daniels on Negotiable Instruments (§ 1618b) all assert that while a bank should not pay a check after the death of the drawer, still a payment made in good faith, without knowledge of the death, or of facts sufficient to cause inquiry, is a valid payment, though the only authority usually cited is that of *Tate* v. *Hilbert* (*supra*).

For the appellant it is argued, *first,* that a check, of itself, is a mere order for the payment of money, not operating as an assignment of any part of the fund, the authority of the drawee or the banker to pay which may be revoked or countermanded by the drawer. This is the rule of law prevailing in England and in this country, with the exception of a very few states in which a check is considered as an assignment of the fund. The rule stated is unquestionably the law of this state as well as the law of the Federal courts. (*Atty.-Genl.* v. *Continental Life Ins. Co.,* 71 N. Y. 325; *O'Connor* v. *Mechanics' Bank,* 124 N. Y. 324; *Bank of the Republic* v. *Millard,* 10 Wall. 152; *Florence Mining Co.* v. *Brown,* 124 U. S. 385; *Fourth St. Bank* v. *Yardley,* 165 U. S. 634.) That the death of the principal revokes the authority of the agent to collect the check, in those jurisdictions where the check is considered a mere order, must also be conceded. (*Fordred* v. *Seamen's Bank, supra ; Atty.-Genl.* v. *Continental Life Ins. Co., supra ; Long* v. *Thayer,*

150 U. S. 520.)   It is further true that the common-law doctrine that death revokes an agent's power, even as to third parties dealing with the agent in good faith without notice, is the general rule in this state.   (*Farmers' Loan & Trust Co.* v. *Wilson,* 139 N. Y. 284.)

At this point we reach the very crux of this case, and the question is whether payment of checks by banks or bankers is an exception to the rule stated.   I think it is. It must be first borne in mind that the rule itself is an exception to the still broader rule that revocation of the power of an agent does not affect third parties dealing with him in good faith without notice.   This is the rule of the civil law even where the agency is revoked by death.   The common-law rule in some states has been changed by statute, in others repudiated (*Cassiday* v. *M'Kenzie,* 4 Watts & Sergeant [Penna.], 282; *Carriger* v. *Whittington,* 26 Mo. 311), while in still others greatly limited (*Lenz* v. *Brown,* 41 Wis. 172; *Ish* v. *Crane,* 8 Ohio St. 521).   There is a difference between the liability of banks to their depositors and that of ordinary debtors to their creditors which justifies excepting the payment of checks from the rule.   If an ordinary debtor refuses to pay his debt to the agent of his creditor, his liability is in no respect increased.   It is not so with a bank.   Its contract with the depositor is to pay his checks as long as his deposit is sufficient for the purpose, and for a failure to pay the checks the bank is liable for any injury to the credit of the drawer occasioned thereby.   In the ordinary conduct of a bank but a minute fraction of its payments is made directly to its depositors.   The others are made on checks in favor of third parties, usually, at least in large cities, presented through other banks or the clearing house.   The number of depositors is often very great, many of them living at other places than where the bank is located.   Of the death of those prominent, either by their public positions, their business activities or great wealth, the bank might be apprised; but of the

great mass their deaths would pass unknown by the bank unless notice of the fact was given.  It would be utterly impracticable for business to be done if, before a bank could safely pay checks, it must delay to find out whether the drawer is still living.

But the dominant and controlling reason for holding that the usual rule that a debtor is not protected in payment to an agent after the death of his principal, though without knowledge of that fact, is not applicable to the payment of checks by banks, is that such has almost universally been accepted as the law.  As already said, all the text books so state the law (in England it has been so settled by section 75 of the Bills of Exchange Act of 1882), and apparently the whole country has assumed the text books to be right.  The rule thus adopted, if not strictly a rule of property, is a rule of conduct affecting property interests that very closely approximates to a rule of property.  I think the fact that the rule has been adopted by the community is reasonably clear.  The use of banks as depositories of money and the practice of making payment by checks prevail in this country to an extent far beyond that existing in any other, so that the situation presented in this case must have frequently arisen.  True, where the estate of the depositor is solvent and the check is given for value, it is of no practical moment whether the bank is liable for the payment of a check after the death of the drawer or not.  Very many, however, must have been the cases where either the estate was insolvent or the check was given without value and the bank has paid it after death, in ignorance of that fact.  Yet, in my research, I have not been able to find in the reports in this country or in England a case where it was sought, under such circumstances, to hold the bank liable except the *Rogerson Case* (*supra*), in which the attempt failed.  The rule that denies protection to persons dealing with an agent after the death of the principal, though in good faith and without knowledge of that fact, is an inherited

1913.]          Opinion, per CULLEN, Ch. J.          [209 N. Y.]

one. In the *Wilson Case* it was declared by this court to be a harsh one, but the court felt that it had been too firmly established in this state to be disturbed by judicial decision, though it recommended a change by the legislature, to place the law in harmony with the more enlightened views of the present time and to promote the interests of justice. · The same reason which there constrained the court to give effect to the rule, despite its disapproval of it, should also impel us to hold the rule inapplicable to bank checks. If there it appeared that the doctrine of the common law had prevailed too long to be disregarded, it also appears almost equally clearly that the common-law doctrine has never prevailed as to checks; for a legal proposition may be nearly as well established by its general acceptance and the failure of any one to question it as it can be by a series of judicial decisions. Even if it should be assumed that the distinction sought to be drawn between the relation of a bank to its depositors and that between ordinary debtors and their creditors would not justify a distinction in the principle of law applicable to the respective cases, nevertheless a rule of conduct of a whole people long prevailing and acted upon should not be subordinated to mere consistency of legal principles. The law presents anomalies. They are to be regretted; but no one would maintain that merely to avoid inconsistency courts would be justified in disregarding rules of action long established by judicial decisions, especially when the exception is more just than the general rule.

The judgment appealed from should be affirmed, with costs.

WERNER, HISCOCK, CHASE, COLLIN and HOGAN, JJ., concur; WILLARD BARTLETT, J., absent.

Judgment affirmed.