**WRIGHTSVILLE & T. R. CO. v. CITIZENS' & SOUTHERN NAT. BANK et al.**

**WHITMAN v. BRAGG, MILLSAPS & BLACKWELL, Inc.**

Circuit Court of Appeals, Fifth Circuit.
December 19, 1929.

Nos. 5715 and 5689.

In No. 5715:

A. R. Lawton, Jr., and Alexander R. Lawton, both of Savannah, Ga., and R. M. Daley, of Dublin, Ga. (Lawton & Cunningham, of Savannah, Ga., on the brief), for appellant.

J. S. Adams, of Dublin, Ga., and Samuel B. Adams and A. Pratt Adams, both of Savannah, Ga., for appellees.

In No. 5689:

Scott Russell, of Macon, Ga., and J. S. Adams, of Dublin, Ga. (Jones, Jones, Johnston & Russell, of Macon, Ga., on the brief), for appellant.

H. B. Troutman, of Atlanta, Ga., and Walter A. Harris, of Macon, Ga. (Troutman & Troutman, of Atlanta, Ga., and Harris, Harris & Popper, of Macon, Ga., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. These two suits arose out of the failure of the First National Bank of Dublin, Ga. The bank failed to open its doors for business on Monday, September 24, 1928, and later during the same day a receiver was appointed by the Comptroller of the Currency.

In No. 5715 the facts were these: On September 21, 1928, the appellant railroad

company, having on deposit with the Dublin bank more than $4,000, requested that bank to transmit $4,000 to its deposit account in the Citizens' & Southern Bank at Savannah. On the same day, pursuant to that request, the Dublin bank mailed its check for $4,000 to the Savannah bank for credit to the appellant's account. The check reached Savannah the next day, which was Saturday, but the Savannah bank closed its business for that day at noon, and did not open the letter containing the check until after 9 o'clock on Monday, the 24th. Before that letter was opened by it, the Savannah bank received a telegram from the Dublin bank, reading as follows: "This is to notify you that the First National Bank of Dublin failed to open this morning by order of the directors of said bank"—and later during the day, but after banking hours, received another telegram from the bank examiner to stop payment on all outstanding checks of the Dublin bank. It had already withheld payment upon receipt of the first telegram. The Savannah bank, upon demand being made upon it, for payment of the amount represented by the check by both the appellant and the receiver, refused to pay either, but brought a bill of interpleader, and paid the money into court, which by final decree ordered it paid to the receiver.

In No. 5689 the facts were these: On September 19, 1928, the Dublin bank received for collection a draft drawn by appellee on M. H. Hogan for $4,222.29, which represented the purchase price of two carloads of cattle. Hogan was acting as agent for E. T. Barnes. On September 18, Barnes, who was a director and a depositor of the Dublin bank, but whose account was overdrawn nearly $1,200, in anticipation of the appellee's draft, of which he was advised, and in order to provide funds with which to pay it, drew a draft for $6,000, payable to that bank on the Carson Naval Stores Company of Savannah, which the Dublin bank sent for collection to the Fulton National Bank of Atlanta. The Carson Naval Stores Company paid Barnes' draft, and the proceeds were remitted to the Fulton bank, which received them on September 21, and after the failure applied them on the Dublin bank's indebtedness to it, which was secured by collateral. By the application of the Dublin bank's balance, and by the sale by the Fulton bank of a portion of the collateral, the debt of the former to the latter was paid, and there has been turned over to the receiver of the Dublin bank collateral of a value greater than the amount of the appellee's draft.

On September 22, the day after payment of Barnes' draft was received by the Fulton bank, the Dublin bank accepted Barnes' check for the amount of appellee's draft and mailed its own check to appellee for a like amount, less exchange, but because of its failure on September 24 that check was not paid.

In No. 5715 it is not shown that the check reached the Savannah bank during banking hours on Saturday, September 22. On the 24th the Savannah bank, at about the hour of opening, and before the check in question had come to its attention, was given notice by the Dublin bank that the latter had failed to open for business pursuant to an order of its board of directors. In banking circles this notice could only mean that the Dublin bank had failed, and that its check should not afterwards be paid. The appellant was the payee of the check, and could have no right of action upon it against the Savannah bank until the latter had accepted it. Fourth Street Bank v. Yardley, 165 U. S. 634, 17 S. Ct. 439, 41 L. Ed. 855. The check was a mere order for the payment of money, and the maker of it had the right to withdraw the order and stop payment at any time before acceptance. Glennan v. Rochester Trust & Safe Deposit Co., 209 N. Y. 12, 102 N. E. 537, 52 L. R. A. (N. S.) 302, Ann. Cas. 1915A, 441. It follows that in our opinion the decree in favor of the receiver was correct.

In No. 5689 the situation is much the same as it was in No. 5659, Pearson, Receiver, v. Summey & Tolson, 36 F.(2d) 732, this day decided, in which it was held that there had been an equitable assignment of the funds of a failed bank, and that such funds belonged to the drawer of a draft who was able to trace and identify it as his. The appellee in this case was successful in showing that the proceeds of his draft, at the time of the Dublin bank's failure, were in the Fulton National Bank, and that it subsequently came into the hands of the receiver. Those proceeds did not belong to the Dublin bank. Barnes testified that the purpose of his draft was to supply funds with which to pay appellee's draft. It is true that there is no direct evidence that the Dublin bank treated the proceeds of Barnes' draft as a special fund out of which appellee's draft was to be paid; but the circumstances could reasonably lead to no other conclusion. The Dublin bank received appellee's draft, and held it for two days, and until Barnes' draft

had been paid, before accepting his check in payment of the draft it held against him.

The judgment in each case is affirmed.