GILBERT A. DAVIS, ADMINISTRATOR OF THE ESTATE OF F. S. WARDNER, *v.* THE WINDSOR SAVINGS BANK.*

*Revocation of Agency by Death of Principal.*

The death of the principal instantly terminates the authority of the agent; and all dealings with the agent thereafter, although by parties ignorant of the principal's death, are void and of no effect.

ASSUMPSIT. Plea, the general issue and notice, and trial by jury, December term, 1872, BARRETT, J., presiding.

It appeared that Mrs. Mary E. Dudley, then covert, deposited in the defendant bank, on the 11th day of July, 1865, $72, on the 16th of October, 1865, $62.50, and on the 17th of said October, $10, in the name of her brother, the intestate, and received from the bank a deposit-book, in which said deposits were entered in due form, according to the practice of the bank ; that she kept said book till the 4th day of December, 1865, when she received of the bank the amount of said deposits, and surrendered said book to the bank, and gave her receipt to the bank for said money. There was no evidence tending to show that the bank had any knowledge, or reason to suppose, that the money be-

* This case was decided at the February term, 1873.

longed to anybody but herself, except the fact that she deposited it in the name of her brother. The intestate died in Panama, on the 31st day of October, 1865, where he had resided for many years. It was claimed by the plaintiff that the money in fact belonged to the intestate, and had been received by his said sister as rents on real estate belonging to him in Windsor; and there was evidence tending to show it to be so. The defendant claimed that the money in fact belonged to the said Mary, and there was evidence tending to show it to be so, and that she deposited in the name of her brother on account of the embarrassed condition of her husband. There was evidence tending to show that the said Mary had got intelligence of her brother's death before she drew the money from the bank; but none tending to show that the officers of the bank had been apprized, or had any knowledge, of his death at the time of repaying the money. The treasurer of said bank was introduced as a witness by the plaintiff, and proved from the books of the bank the fact of such deposit and its repayment as aforesaid, and identified said deposit-book. On cross-examination he was asked what was the uniform practice of the bank when one person deposited money in the name of another, as to the repayment of that deposit when called for, and answered: " So far as I know, whenever a person comes to the bank with a deposit, whether it is in his own name or another name, if we have reason to suppose he came honestly by it, we pay him the money for it, and take up the book." There was no evidence different from this on that subject. It appeared that some time within a year before the bringing of this suit, the plaintiff gave the notice required by the by-laws for the withdrawal of deposits, and called on the bank to pay said money to him as administrator of said Wardner; that the bank did not pay the money, but informed the plaintiff of the fact of having paid it to Mrs. Dudley as aforesaid, and showed him her receipt therefor. After the evidence was closed, the court expressed the view that if the officers of the bank at the time of making said repayment, acted in good faith, and had not been apprized, and did not know, of the death of the intestate, the bank would not be affected by his death, as such a revocation of Mrs. Dudley's agency as to

93

make it liable in this action, even though the jury should find that Mrs. Dudley, in making said deposit, was acting as agent of the intestate. Upon such intimation of the court, the plaintiff declined to go to the jury, and the court directed a verdict for the defendant; to which the plaintiff excepted.

*Gilbert A. Davis, pro se.*

The rule of the common law is well settled, that the authority of an agent is revoked by the death of his principal; that such revocation is absolute and instantaneous, unless the power be coupled with an interest. The act, if done at all, must be done in the name of the principal; and it is impossible that it can properly be done after his death, since a dead man can do no act; and any authority executed for another person, presupposes that the party could at the time, by his personal execution of it, have made the act valid. Story Agency, § 488; 2 Kent Com. 872, 873; Chit. Cont. 197; *Michigan State Bank* v. *Leavenworth*, 28 Vt. 216; *Michigan Ins. Co.* v. *Leavenworth*, 30 Vt. 22; *Gale* v. *Tappan*, 12 N. H. 145; *Wallace, admr.* v. *Cook*, 5 Esp. 118; *Wallace et ux.* v. *King*, 1 Stark. 121; *Campauri* v. *Woodburn*, 28 Eng. L. & Eq. 321; *Harper et al.* v. *Little*, 2 Greenl. 14.

In *Watson* v. *King*, 4 Camp. 272, it is ruled that a power of attorney, though coupled with an interest, is instantly revoked by the death of the grantor; and an act afterwards *bona fide* done under it by the grantee, before notice of the death of the grantor, is a nullity.

*J. S. Marcy*, for the defendant.

The death of the principal should not and does not, under all circumstances, operate a revocation of the agency. Such a rule, if invariable, would often work great injustice, as the circumstances of the case in hand demonstrate. Story Agency, 590, 599, note; *Erick* v. *Johnson*, 6 Mass. 193; Minot's Dig. 21, pl 6; Morrison's Dig. 21, pl. 54, 57; 10 N. H. 156; 11 N. H. 397.

The opinion of the court was delivered by

PIERPOINT, Ch. J. The only question presented by the bill of exceptions is, whether the defendant bank was justified in paying

the money which it held to the credit of the deceased, to Mrs. Dudley, his sister, who deposited the money in the bank as his agent, such payment being made after the revocation of her agency by the death of her principal, said bank having no knowledge of such death, and paid the money in good faith. That the death of the principal terminates the agency, all the authorities agree ; but the effect of such death upon the acts of those who in good faith deal with the agent without knowledge of the death, is a subject upon which there is some diversity of decision. But the weight of authority seems to be decidedly in favor of the principle, that the death of the principal instantly terminates the power of the agent, and that all dealings with the agent subsequent to that event, are void and of no effect, even though the parties were ignorant of that fact. Kent lays down the rule, that " the authority of an agent determines by the death of his principal. By the civil law, the acts of an agent done *bona fide* after the death of the principal, and before notice of his death, are valid and binding on his representatives. But this equitable principle does not prevail in the English law, and the death of the principal is an instantaneous revocation of the authority of the agent, unless the power be coupled with an interest." 2 Kent Com. 646. Story lays down the same doctrine, and says : "As the act of the agent must, if done at all, be done in the name of the principal, it is impossible that it can properly be done, since a dead man can do no act, and we have already seen that every authority executed for another person, presupposes that the party could at the time, by his personal execution of it, have made the act valid ;" and numerous authorities, both English and American, are referred to in support of the position. This principle was expressly held in *Bank* v. *The Estate of Leavenworth*, 28 Vt. 209, and also in *Mich. Ins. Co.* v. *Leavenworth*, 30 Vt. 11. In the latter case, Judge Bennett, in delivering the opinion, says : " Though it may be true that when a power is revoked by the act of the party, notice may be necessary, yet when revoked by his death, the revocation at once takes effect ; and if an act is subsequently done under the power, though without notice of the death of the party, the act is void." Many other

cases might be referred to in support of the rule, but I do not deem it necessary.

A different doctrine was held in *Cassidy* v. *McKenzie*, 4 Watts & Sergt. 282 ; but as is said in a note in 2 Kent Com. 873, " It is substituting the rule of the civil for the rule of the common law."

Indeed it is difficult to see how there can be an agent when there is no principal. The question whether in this case there was an interest coupled with the agency, and some other questions that were discussed in the argument, do not arise upon the exceptions as made up.

Judgment reversed, and cause remanded.