LOUISA WEBER, Appellant, *v.* HERBERT L. BRIDGMAN Respondent.

*Court of Appeals, June 4, 1889.*

Reversing, 46 Hun, 681.

1. *Principal and agent. Burden of proof.*—The burden of proof is on a person, who has dealt with another as an agent, and is seeking to charge the personal representative of the alleged principal, as though his dealing had been with the principal, to show that the agency existed, and that the agent, with whom he dealt, had the authority he assumed to exercise or that the representative is estopped from disputing it.
2. *Revocation by death of principal.*—No notice is necessary, on the death of a sole principal where the agency is not coupled with an interest, to relieve the principal's estate of responsibility, even on contracts in which the agent has entered with third persons who were ignorant of his death.
3. *Power of attorney.*—The giving of an authority in writing imports that the extent of the authority is to be looked for in its terms, and not elsewhere.

4. *Ratification.*—There can be no ratification of payment of a bond and mortgage to the agent after the death of the principal, so long as the representative is ignorant of the existence of the securities, and of the fact of their payment; and the burden of showing knowledge is on the mortgagor or his grantee.

5. *Same.*—The payment of the amount of a mortgage to an agent of the mortgagee possessing a power of attorney, and his satisfaction thereof after the death of the principal, of which death the agent then had, but the person making the payment did not have, notice, are insufficient as a payment as against a subsequent action of foreclosure by the personal representatives of the mortgagee.

6. *Same. Authority.*—The fact that the agent had possession of the bond and mortgage, where his power is defined by power of attorney, will not raise a presumption of his authority so as to sustain the payment thereof, if the payer has notice of the terms of such power of attorney.

Appeal from an order of the general term of the supreme court, reversing a judgment in favor of the plaintiff, entered upon the decision of the court.

The action was for the foreclosure of a mortgage executed by James Dunn to Thomas Bierds, conveying premises situated on Carlton Avenue, Brooklyn, as security for the payment of his bond of $2,000, dated May 9, 1872. It was assigned to Paul Weber. He died intestate.

On the 4th of June, 1874, the plaintiff, Louisa Weber, his widow, was appointed administratrix of his estate, and on July 1, 1886, commenced this action.

James Dunn was made defendant, but did not appear. The other defendants were made parties, as having an interest in the premises subsequent to the lien of the mortgage. Adams answered. He alleged that on the application of one Herbert Bridgman, he loaned him, April 19, 1880, and February 21, 1884, certain sums of money on his bond secured by mortgages of those dates, on the premises described in the complaint; that at the time of each transaction Bridgman was the lawful owner of the property in fee simple.

The defendant Bridgman claims to be the owner of the premises. Both the defendants aver that the mortgage in

suit was paid to the then holder, and duly satisfied of record. May 13, 1884.

The trial judge found in favor of the plaintiff, and directed the usual judgment of foreclosure and sale. The general term, upon the defendant's appeal, reversed the judgment " upon questions of fact and questions of law. " The question of fact litigated upon the trial arose upon the defense of payment. It appeared, to the satisfaction of the trial judge, that Paul Weber, then residing in New York, but about to visit Europe with his wife and family, did on June 6, 1871, execute to one August Hartwig a power of attorney under seal, authorizing him in these words : " To demand, ask, sue for, collect and receive all sums of money, debts, rents, dues, accounts, interest on bond and mortgage, and other demands of every kind, nature, description, whatsoever, which are or may become due, owing or payable to me from any person or persons whomsoever, and to give good and sufficient receipts, acquittances and discharge therefor, giving and granting unto my said attorney full power to do and perform all and every act and thing whatsoever requisite and necessary to be done, in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney, or his substitute shall lawfully do or cause to be done by virtue hereof. "

Weber acknowledged this instrument, so as to entitle it to be recorded. He remained absent from New York, and died in Germany, January 11, 1874. During his absence, Hartwig bought for him the bond and mortgage in question, taking an assignment to Paul Weber, and after record, held possession of said bond, mortgage and assignment till May 12, 1874, collected and receipted for in Paul Weber's name, the semi-annual interest as follows :

1872.

Oct. 9.  Of James and Bridget Dunn, the then
   owners. . . . . . . . . . . . . $70 00

1873.

June 9.  Of James and Bridget Dunn, the then
         owners. . . . . . . . . . . . . $70 00

Dec. 2.  Of James and Bridget Dunn, the then
         owners. . . . . . . . . . . . 70 00

And indorsed the same on the bond.

On April 23, 1874, Bridgman acquired title to the premises, and assumed payment of the mortgage. It became due May 9, 1874, and was paid by him to Hartwig, May 12, 1874, and a discharge was given by Hartwig as attorney for Weber. At the same time the bond and mortgage the assignment to Weber and the power of attorney were delivered to Bridgman. Hartwig, during all his transactions, knew of the death of Weber, having been informed of it as early as the 1st of February, 1874, but he did not disclose that fact to Bridgman. But the trial judge also finds that Bridgman made no inquiry " as to the whereabouts of the principal, Paul Weber, or whether he was dead or alive."

Mrs. Weber returned from Europe on the 22d or 24th of May. The trial judge also found that Hartwig never accounted to the plaintiff for the bond and mortgage or its proceeds, nor for the assets in his hands, nor did he pay her any money; that plaintiff never ratified the act of Hartwig in cancelling said mortgage ; that she had no notice of the existence of said bond and mortgage, or the cancellation thereof, and never knew of the concellation until within a short time before the commencement of this action ; that said Hartwig left no record of it, nor ever informed plaintiff of its existence or cancellation ; that said mortgage is wholly unpaid, and remains unimpaired as a valid and subsisting lien, by reason of any act of the plaintiff or her duly authorized agent.

As conclusion of law, he held that the agency of Hartwig terminated with the life of Paul Weber, and that the satisfaction of the mortgage was invalid and void.

*Alexander S. Bacon*, for appellant.

*Thomas H. Rodman*, for respondents.

DANFORTH, J.—It should be assumed, without argument, that the plaintiff is not bound by the act of Hartwig, unless his authority to receive the money and discharge the mortgage is established, or unless she has, with knowledge of the facts, recognized that transaction and adopted it. The respondents' contention is that both alternatives are established, viz.: that the payment to Hartwig was a valid payment, and also that Hartwig accounted with the plaintiff and paid over to her the money so received by him. As Bridgman dealt with Hartwig as an agent, and now seeks to charge the representatives of Weber as if his dealing had been with the principal, the burden of proof was on him to show that the agency existed; second, that the agent with whom he dealt had the authority he assumed to exercise; or, third, that the plaintiff is estopped from disputing it.

That an agency of some kind did at one time exist in favor of Hartwig was sufficiently manifested by the power of attorney and proof of its due execution and delivery by Weber. If it be conceded that the act in question was within the authority which Hartwig once had, it would not aid the defendant, for that authority was determined by the death of Weber before the act was performed, and although Bridgman had no notice of his death, the act was void and the estate of the principal was not bound.

The question is not new, and it has been uniformly answered by our decisions to the effect that the death of the principal puts an end to the agency, and, therefore, is an instantaneous and unqualified revocation of the authority of the agent. 2 Kent's Com. 646; Hunt *v.* Rousmanier, 8 Wheat. 174.

There can be no agent where there is no principal. There are no doubt exceptions to the rule, as where the agency is

coupled with an interest, Knapp *v.* Alvord (10 Pai. 205), Hunt *v.* Rousmanier (*supra*); Hess *v.* Rau (95 N. Y. 359) or where the principal was a firm, and only one of its members died. Bank *v.* Vanderhorst, 32 N. Y. 553.

But both cases recognize the general rule to be as above stated. In Davis *v.* Windsor Savings Bank (46 Vt. 728), the rule was applied. The defendant paid money to the agent after the death of the principal, but in ignorance of it, and the administrator of the deceased recovered. It is quite unnecessary to go through the cases on this subject.

The rule at common law which determines the authority of an agent by the death of his principal, whether the fact of death is known or not, is well settled, and no notice is necessary to relieve the estate of the principal of responsibility, even on contracts into which the agent had entered with third persons who were ignorant of his death. Those who deal with an agent are held to assume the risk that his authority may be terminated by death, without notice to them. This rule was established in England (Leake on Con. 487), although now modified by statute, and is generally applied in this country. Story on Agency, § 488; Pars. on Con., vol. 1, p. 71; 2 Kent Com. (12th ed.), 645, 646.

In some states alterations have been made by statute, and following the civil law it was held in Pennsylvania, Cassiday *v.* McKenzie (4 Watts. & Serg. 282), that the acts of an agent or attorney done after the death of his principal, are binding upon the parties. This was, however, in opposition to the current of authority. 1 Pars. on Con., 71; 2 Kent Com. 646.

But even that case does not aid the defendant, for here the agent knew of the death of his principal. Moreover the defendant might have known it had he taken the precaution to inquire. He had never before dealt with the agent. The power of attorney was not of recent date, and the defendant should be held to have assumed the burden of showing that Hartwig was, at the moment of the transaction,

a person authorized to act so as to bind the real owner of the bond and mortgage, whoever that person might prove to be.

There is no equity in his favor, for the loss, if any, is from his own negligence.

It is claimed, however, by the learned counsel for the respondent, that the rule has application only where the act of the agent is required to be done in the name of the principal, and his contention is, as we understand it, that inasmuch as Hartwig had possession of the bond and mortgage the defendant, from that fact, had a right to infer an agency to collect and so the payment was valid. However that might be under other circumstances, the contention has no force in this instance. The power of Hartwig was not left to inference. Whatever it was it came before the defendant in writing. The power of attorney was in his hands. It authorized such acts only as could be performed in the name of the principal, and so the defendant understood it. He caused the power to be recorded, took a discharge of the mortgage under it, executed by Hartwig as agent for Weber, and gave the check, payable to the order of Hartwig, in that character. Except for the power of attorney, and its recitals and the acts of Hartwig under it, the defendant would not have even the shadow of a defense. In his own name Hartwig could do nothing, and of this the defendant had full notice. The power of attorney, which accompanied possession, defines the actual authority, and the defendant had notice of its contents in the same moment that he saw the bond and mortgage in the hands of the attorney. The authority which might be gathered from the possession of the securities is under these circumstances of no force. The giving of an authority in writing imports that the extent of the authority is to be looked for in its terms, and not elsewhere.

But a more difficult question remains; one on which the courts below differed, and, in consequence of which difference, we have jurisdiction to pass upon it (Code, §§ 1337,

1338).   It is a question of fact, whether, with a knowledge of the circumstances, the plaintiff ratified the payment.   The learned counsel for the respondent states the proposition in the following form, viz.: " Has Hartwig duly paid over or accounted to the plaintiff, here, as administratrix of Paul Weber, for the money so received, $2071.15," and assumes that the general term has answered the inquiry in the affirmative, and, upon that conclusion reversed the special term.

Upon examination of the record, we find that the plaintiff left this country, with her husband, in 1871, and remained with him until his death.   It does not appear that she had previous knowledge of his affairs, and it does appear that the mortgage in suit became his property, through the agency of Hartwig, while his principal was absent from the country.   There is no evidence that she knew anything in respect to it, until after her return.   In May it had been delivered up by Hartwig, and after her appointment as administratrix, in June, Hartwig brought to her a tin box, saying : " All your property which I have in my hands is in this box."   It contained papers ; among others, certain mortgages, but nothing concerning the one now in suit, unless it can be found in an account or memorandum which may have been in the box, but, if so, was not the subject of examination or knowledge on her part.   This paper is the chief reliance of the respondent.   It is of two pieces, pages, evidently, taken from some small diary or pocket memorandum.

They bear date January 11, 1874, that being the day of the death of Mr. Weber, and at the bottom the date May 22, 1884, that being assumed as the day of the arrival of Mrs. Weber in this country.   Knowing as we now do all that the record discloses concerning the transactions of Hartwig, we find it impossible to see that the account contains any information as to the payment by Bridgman, or as to the mortgage paid.   It contains the name of neither mortgagor or mortgagee, nor of the payer, or description in other way

of the mortgage, but the item relied upon and to which our attention is now called by the learned counsel for the respondent, as the most important, is in these words: "May 13, De Kalb, Brooklyn, 2071, 65." It is now said by the respondent, that De Kalb, in this place, was an error for "Carlton," that being the avenue on which the premises described in the complaint in this action, were situated, and no mortgage having been found covering property on "De Kalb." But the entry recites no mortgage, as to the source from which the money came, and the fact of error in the description now insisted upon, is one of which there is no suggestion that the plaintiff had knowledge. We do not see how it conveyed any information to her, or how it could be regarded as sufficient even to put her upon inquiry. Long after this paper or account was given to her, she learned, from other sources, of the mortgage, and at once commenced this action. It is true that between the time of payment and the beginning of this suit, many years elapsed, but the fact of payment was unknown to her. It is also true that she failed before this action, and during all these years, to demand either principal or interest from the defendant, but she was altogether ignorant that the security existed, by means of which either had become due. To show the contrary was the duty of the defendant, if the truth enabled him to do so. The trial judge found that he had failed in this respect, and we have no hesitation in saying that a different finding would not have been justified by the testimony placed before him. The conclusion actually reached was the only one permitted by the evidence. The appeal necessarily succeeds. Sherwood *v.* Hauser, 94 N. Y. 626; Baird *v.* Mayor, 96 Id. 567; Crane *v.* Baudouine, 55 Id. 256; Westerlo *v.* De Witt, 36 Id. 340.

The order of the general term should, therefore, be reversed, and the judgment of the special term affirmed, with costs.

All concur.