(12 Misc. Rep. 131.)

### SOLTAU v. GOODYEAR VULCANITE CO.

(Common Pleas of New York City and County, General Term. April 1, 1895.)

CONTRACT—ABANDONMENT—BREACH BY OTHER PARTY.

    A seller notified the buyer that the goods were expected, and asked for shipping instructions, to which the buyer replied without objecting that the time named in the contract for delivery had expired; but, when the goods were delivered, he then insisted that they had not been delivered as provided by the contract, and that the seller should extend the time of payment. The seller refused to extend the time of payment, or to take back the goods, unless the entire contract should be canceled. The buyer

refused to cancel the contract, saying that he would hold the seller to it. The seller then refused to make further deliveries. *Held*, that the buyer committed the first breach of the contract, and the seller was justified in refusing further performance.

Action by Olga J. C. Soltau, as administratrix of Robert Soltau, deceased, against the Goodyear Vulcanite Company. There was a verdict in favor of plaintiff, and defendant moves for a new trial, on exceptions ordered to be heard at general term in the first instance. Denied.

Argued before BOOKSTAVER, BISCHOFF, and GIEGERICH, JJ.

George M. Pinney, for plaintiff.

William H. Hamilton, for defendant.

BISCHOFF, J. The plaintiff's cause of action was admitted by the pleadings, and the issue upon the trial was confined to the defendant's counterclaim for breach of a certain contract for the sale of goods to the defendant by plaintiff's intestate, Robert Soltau.

The contract was as follows:

"New York, May 19th, 1892.

"Sold to the Goodyear Vulcanite Co., for account of Mr. Robert Soltau, 10 tons (about 22,000 lbs.) G. S. Borneo rubber, of the usual grade of this mark, at 29½ c. per lb., net cash, payable half on August 2, 1892, and half on Sept. 2, 1892; rubber to be delivered, half during last half of June, and half during the last half of August.          De Long, Betts & Co., Brokers, &c."

No more than 25 baskets (5,754 pounds) of the rubber contracted for were delivered, and 23 baskets were subsequently offered by the vendor, Soltau, to defendant (in all about 10,000 pounds), and these latter were refused.

The circumstances attending this delivery and offer, and the attitude of the parties, appear from the following correspondence, received in evidence:

"June 28th, 1892.

"Goodyear Vulcanite Co., 353 Broadway, City—Dear Sirs: I have advices of 25 baskets G. S. Borneo, a/c of your contract of May 19th, for 10 tons. These goods are due any day. Please send shipping instructions. Shall I notify Mr. Corfield to be on hand when weighing? [Etc., as to other matters.]
"Yours, truly,          Robert Soltau,
          "Betts."

"Morrisville, Pa., July 1st, 1892.

"Robert Soltau, Esq., 15 Cedar Street, City—Dear Sir: In reply to your memod. of the 28th past, you surely know that no shipping directions are required, as all rubber goes to our works. Our weigher has instructions, and requires no special. [Further deals with other matters.]
"Yours, truly,          The Goodyear Vulcanite Co.,
          "S. S. Sonneborn, Treas."

"New York, July 7th, 1892.

"Goodyear Vulcanite Co., City—Dear Sir: Inclosed I beg to hand you bill for 25 baskets rubber, on a/c of your contract with me. These goods were on the way to your factory when I received word from Messrs. De Long, Betts & Co., yesterday, that you did not want them shipped, and I could not recall them then.
"Very truly, yours,          Robert Soltau."

The bill sent with the above provided for payment August 2d, according to the terms of the contract.    In answer the defendant sent the following:

"New York, July 8th, 1892.

"Mr. Robert Soltau, City—Dear Sir:  We are in receipt of your yesterday's favor with invoice inclosed for 25 baskets of Borneo, which, as you are well aware, was not delivered according to contract;  and, while our factory is closed for repairs the better part of this month, we must ask you to mark the bill, if you wish us to keep it, Sept. 2d, instead of August 2d.    On the other hand, it would be agreeable to us, if you have other use for the rubber, to return it to you.

"Yours, truly,                                    Goodyear Vulcanite Co.,
                                                  "S. S. Sonneborn, Treas."

### In reply, under date of July 8th, the plaintiff's intestate wrote:

"Dear Sirs:  In reply to yours of 8th inst., while not entering too far upon the conditions of the contract, I wrote you on June 28, and have your reply that the goods were to be shipped as usual, and nothing was said about contract. When I rec'd word from Messrs. De Long, Betts & Co., the goods were on the way.    If you refuse to receive these goods, it will cancel the whole contract, and you may upon this condition return the 25 baskets."

### Under date of July 13th, the defendant replied:

"We own your favor of the 8th inst., and in reply would state that we decline to entertain your proposition of canceling the contract by taking back the twenty-five baskets of Borneo.    We have delayed answering your letter, as we preferred to fully consider the matter and advise ourselves on the subject. The contract we had with you speaks for itself, and we shall hold you responsible for its strict performance.    We are, however, ready to carry out our proposition of the 8th inst."

### Of the same date, from plaintiff's intestate, in reply:

"Yours of the 13th at hand.    I understood from your previous letters that you wanted to return the 25 packages rubber lately shipped you, and I agreed to this, and am waiting for them, and would like to know if you are going to return them or not.    If your factory is now closed, you certainly knew this when I notified you that I had 25 baskets for you.    Your answer indicated to ship them, which I did.    As for changing the contract, I cannot do it.    Either you take the goods as per contract, and as they arrive, or, if you wish, return the 25 baskets, and cancel the sale.    *   *   *   I would like to know positively what you are going to do in regard to the 25 baskets, as your delay is causing me a loss," etc.

### From defendant, July 14th:

"We are in receipt of your yesterday's favor, and confirm for the third and last time that we are ready to return the 25 baskets of rubber, but not with the condition that we cancel the contract, which we absolutely decline to do. If you wish to receive this rubber without conditions, we shall be glad to return it to you as soon as we hear from you."

### To which plaintiff's intestate replied, July 15th:

"Yours of 14th inst. at hand.    I will not receive the 25 baskets unless upon the condition that the contract is canceled, as I would be at a loss were I to take them back now, and tender them to some one else.    I therefore return the bill to you for them."

### The next letter sent in the course of this correspondence follows:

"New York, July 18th, 1892.

"Goodyear Vulcanite Co., City—Dear Sirs:  I have notice of shipment of 23 baskets G. S. Borneo rubber, which is due here about the 20th inst.    As no shipping instructions are necessary, I shall ship this to your factory, as usual.

"Yours, truly,                                         Robert Soltau,
                                                      "P. T. Betts."

This letter was returned to Mr. Soltau by defendant, bearing the statement:

"Will only accept the above payable Sept. 2d.
"Goodyear Vulcanite Co.," etc.

Upon July 21st the defendant wrote:

"Having received no corrected bill from you, we have returned to you the twenty-five baskets of Borneo rubber. There seems nothing left to us but to adhere strictly to the contract."

As a matter of fact, the rubber was never returned, and it appeared that on the 21st of July the vendor's agent, Betts, had acceded to the proposition of defendant, and had made the bill payable September 2d, in ignorance of the fact that Mr. Soltau had died on the 19th. Upon learning of this fact, Betts wrote to defendant, under date of July 26th, informing it of the death and the consequent nullity of his act after the agency had terminated. It was admitted, that the defendant's damage resulting from the non-delivery of the rubber called for by the contract was as claimed. Upon the trial a verdict was directed for the plaintiff, and the defendant's exceptions presenting the point as to the correctness of the ruling disallowing the counterclaim, and refusing a submission to the jury of the issue claimed to be raised by the evidence given in its support, are before us for review in the first instance.

The determination of the court at trial term proceeded upon the ground that the defendant, and not Soltau, was first in fault, and that, by refusing to perform the contract according to its terms as to payment, the former committed a breach which entitled the latter to abandon further performance. It was held by the learned judge that the defendant could not now urge the vendor's default of strict delivery under the contract, in that by its answer of July 1st to the vendor's letter of June 28th, with no mention of the fact that the time for delivery had expired, it had waived such delivery during the last half of June, and, furthermore, had accepted and used the goods delivered; that, therefore, it could not avail itself of the claim that there was in that regard a breach upon the part of the vendor. An extension of time for the performance of a contract operates as a waiver of forfeiture for delay (Gallagher v. Nichols, 60 N. Y. 438); yet knowledge of the facts constituting the forfeiture is essential (Robertson v. Insurance Co., 88 N. Y. 545; People v. Connor, 46 Barb. 333). A party to a contract will be estopped from asserting the other party's default where he has induced such party to act upon the reasonable belief that he will waive such default, and the party so acting has been misled by his reliance upon that belief (7 Am. & Eng. Enc. Law, p. 32, and cases cited); but the basis of such an estoppel is an action induced upon the part of the party seeking to avail of it (People v. Bank of North America, 75 N. Y. 560; Dezell v. Odell, 3 Hill, 215). It would, perhaps, seem that from the evidence in this case the jury might have found facts sufficient to support an inference that the defendant's agent, Sonneborn, when writing on July 1st from Morrisville, Pa., in answer to Soltau's letter of June 28th, addressed to defendant's New York office, was

acting under a mistaken assumption of fact that the goods had been delivered in New York before the end of June.    See Robertson v. Insurance Co., supra.    No agreed place of delivery was specified in the contract, and in such a case it is to be assumed that the goods are to be at the buyer's disposal at the place where they are sold, in the absence of circumstances leading to an inference of a contrary intent.    21 Am. & Eng. Enc. Law, p. 526, and cases cited.    Nor was the vendor induced by this letter to forego delivery within the time required by the contract, since it was not received until after that period had elapsed, and, furthermore, there was no proof that he had the capacity to perform within the time.    Eddy v. Davis, 116 N. Y. 247, 22 N. E. 362; Nelson v. Plimpton Co., 55 N. Y. 484; Lawrence v. Miller, 86 N. Y. 137.

But, assuming that there was a question for the jury upon the issue of the waiver of June delivery, there is another question in the case which, if it be determined, as matter of law, adversely to the defendant, necessarily renders this prior question of fact immaterial.    This question relates to the defendant's acceptance and retention of the goods delivered after the lapse of the agreed time for delivery, and, we think, calls for an answer which fully supports the conclusion reached below.    The defendant, assuming a default upon the part of Soltau, took the position that the goods should be returned, and the latter charged with a breach of the contract, the damages for which breach might be lessened by his subsequent deliveries of rubber,—a position consistent with defendant's legal rights.    But, unfortunately for its present contention, this position was not maintained.    It offered to retain the rubber upon condition that payment therefor under the contract should be deferred to the last period of payment for goods to be subsequently delivered, and refused to accept other goods of the earlier delivery except upon the same terms.    To this Soltau did not accede, but insisted that a return of the goods would cancel the contract, and claimed payment according to its terms if the rubber were retained by defendant.    Assuming the fact of his previous default, his claim that a return of the goods would cancel the contract was legally unsupported, and defendant's right to return them, with no loss of its existing remedy upon the contract, unaffected.    The return might, in view of Soltau's position, have merely put him further in default, but the fact remains that the defendant, still insisting that no payment on August 2d, as called for by the contract, would be made, continued to retain the goods thus tardily delivered, and at no time returned them.    By this the vendor's default was waived.    Bock v. Healy, 8 Daly, 156; Baldwin v. Farnsworth, 10 Me. 414.

The objection to the date of delivery, as reiterated by defendant in its letters, is not to affect the significance of its continued retention of the goods; and its definite and unretracted assertion of a determination to refuse payment on August 2d must be taken as a justification for the vendor's abandonment of further performance.    As was said in the case of Chapman v. Morton, 11 Mees. & W. 534, by Lord Abinger, C. B.:

"We must judge of men's intentions by their acts, and not by expressions in letters which are contrary to their acts. If the defendant intended to renounce the contract, he ought to have given the plaintiff distinct notice at once that he repudiated the goods. * * * Instead of taking this course, the defendant has exposed himself to the imputation of playing fast and loose; declaring in his letters that he will not accept the goods, but at the same time preventing the plaintiffs from dealing with them as theirs."

By reason of the defendant's definite and concededly unretracted refusal in advance to perform the contract, Soltau was absolved from any duty of further performance (Shaw v. Insurance Co., 69 N. Y. 286; Monroe v. Reynolds, 47 Barb. 574); and, the defendant being charged with the first fault, his abandonment of the contract in its entirety laid him open to no liability for a failure to make delivery of the second lot of rubber, as called for during the last half of August, assuming the contract to have been in its nature divisible (Pope v. Proter, 102 N. Y. 366, 7 N. E. 304).

As to the effect of the letter sent by the agent, Betts, on July 21st (two days after the death of Soltau), acquiescing in the extension of payment proposed by defendant, it can avail the defendant nothing. While, in the case of a mere revocation of authority in fact, notice is required to be given by the principal in order that he may not be bound should the agent continue in his usual course of dealing in transactions wherein he had theretofore been recognized as such by all parties (Barkley v. Railroad Co., 71 N. Y. 205; McNeilly v. Insurance Co., 66 N. Y. 23; Claflin v. Lenheim, Id. 301), yet, in the case of the termination of an agency, when not coupled with an interest, by the death of the principal, the question is determined upon different principles. The rule at common law which determines the authority of an agent by the death of his principal is well settled, and no notice is necessary to relieve the estate of the principal of responsibility, even on contracts into which the agent had entered with third persons who were ignorant of his death. Those who deal with an agent are held to assume the risk that his authority may be terminated by death without notice to them. Weber v. Bridgman, 113 N. Y. 605, 21 N. E. 985.

The conclusion is that plaintiff's intestate was not chargeable with a breach of the contract, upon the evidence adduced, and the direction of a verdict in favor of the plaintiff upon her admitted cause of action was proper.

Exceptions overruled, and judgment for plaintiff as directed below. All concur.